1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
9                                     AT TACOMA

10   NYLYSHA STARVION BELAFON
     ARADON, et al.,
11                                                CASE NO. 2:20-CV-1665-RSM-DWC
                         Plaintiff,
12                                                REPORT AND RECOMMENDATION
           v.                                     DENYING PLAINTIFFS' MOTION
13                                                FOR PARTIAL SUMMARY
     SNOHOMISH COUNTY, et al.,                    JUDGMENT
14
                         Defendant.               Noting Date: December 17, 2021
15

16         The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

17   States Magistrate Judge David W. Christel. Several motions are presently pending before the

18   Court. This report and recommendation addresses only Plaintiffs' Motion for Partial Summary

19   Judgment (Dkt. 37).

20                                     PROCEDUAL BACKGROUND

21         On October 16, 2020, Plaintiffs filed a complaint in King County Superior Court alleging

22   causes of action for negligent administration of the Snohomish County Parental Dependency and

23   Termination Program, negligent investigation, negligent infliction of mental distress, violation of

24   the Fourteenth Amendment, violation of the Fourth Amendment, abuse of process, and outrage.

1   Dkt. 1-1. On November 12, 2020, Defendants Snohomish County and Di Vittorio removed the

2   case to this Court. Dkt. 1.

3       On February 16, 2021, this Court entered a Report and Recommendation denying

4   Plaintiff's motion to remand (Dkt. 30), and on March 22, 2021, the Honorable Ricardo S.

5   Martinez adopted it (Dkt. 34).

6       On July 2, 2021, Plaintiffs filed the instant Motion for Partial Summary Judgment (Dkt.

7   37), which was ultimately re-noted to September 24, 2021. All Defendants oppose the motion.

8   Dkt. 46, 50, 53. Plaintiffs filed a reply. Dkt. 64. Plaintiffs request oral argument, however, the

9   Court finds the parties' pleadings sufficiently address the points in question.

10                              FACTUAL BACKGROUND

11      To provide context for the issues presented, but not for purpose of establishing the facts

12  of this case, the Court sets forth factual allegations taken from *Matter of Dependency of*

13  *A.E.T.H.*, 9 Wash. App. 502, 508 (2019), *cert denied*, *In re A.E.T.H.*, 195 Wash. 2d 1013 (2020).

14  As noted below, while the factual allegations from the Court of Appeals include many of the

15  findings from a memorandum entered by the Superior Court Judge, the Washington Court of

16  Appeals also clearly held that it was improper for that judge to enter the memorandum into the

17  record in the first place because she had already recused herself from the case. *Matter of*

18  *Dependency of A.E.T.H.*, 9 Wash. App. 2d at 522-25.

19      Plaintiffs Nylysha Aradon (Aradon) and Carey Hayes (Hayes) are the biological mother

20  and father of minor, A.H.,[1] born February 24, 2013. Dkt. 1-1 at 2-3. At birth A.H. tested positive

21  for methadone, as did Plaintiff Aradon, who states that she is a recovering drug addict who

22

23  _____

24      [1] The state court case captions refer to A.H. as A.E.T.H.

REPORT AND RECOMMENDATION DENYING
PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2

1   entered a drug rehabilitation methadone program in October 2012. Dkt. 1-1 at 4.

2        Due to this and other issues, Washington Department of Social and Health Services

3   (DSHS) removed A.H. from the hospital and placed her with a foster parent, then initiated a

4   dependency petition in Snohomish County Superior Court. Dkt. 1-1 at 4. On May 23, 2013, the

5   Snohomish County Superior Court found A.H. to be dependent, and ordered Plaintiffs Aradon

6   and Hayes to engage in services. Dkt. 1-1 at 5.

7        Snohomish County Superior Court (the Superior Court) operates a program that recruits,

8   trains, supervises, and maintains volunteer Guardian Ad Litems (the VGAL program) who

9   investigate, file reports, and make recommendations in parental dependency and termination

10  cases. Dkt. 1-1 at 3. The Superior Court appointed VGAL Denise Estabrook (Brook) to represent

11  A.H. Dkt. 37 at 3. Brook died unexpectedly in January 2015, and is not a party in this case. Dkt.

12  1-1 at 3. Significantly, however, the Honorable Anita Farris (Judge Farris), who presided over

13  the A.H's termination case in Snohomish County, would ultimately determine that Brook

14  committed several violations of the VGAL rules during the course of her appointment as A.H.'s

15  VGAL, such as providing "adoption assurance" to the foster mother, communicating with the

16  foster mother using Brook's personal email (causing many email communications with the foster

17  mother to "disappear"), emailing the foster mother unredacted confidential reports, withholding

18  and concealing the identity of A.H.'s medical providers from Plaintiff Aradon, and assisting the

19  foster mother in the creation of a false "restrictive food list" that Plaintiff Aradon was required to

20  follow during visitation with A.H. (even though it became known within the VGAL program that

21  it was not based on medical advice and that A.H. did not have food allergies). Dkt. 1-1 at 5-7.

22       Following her death, the Superior Court appointed Brook's supervisor, Defendant Susan

23  Walker (Defendant Walker), to replace Brook as A.H.'s guardian ad litem. Dkt. 1-1 at 7. In

24

REPORT AND RECOMMENDATION DENYING
PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3

1    October 2015, Plaintiff filed an administrative complaint against Defendant Walker, and sought

2    to remove Defendant Walker as the GAL of A.H. due to misconduct discovered by Judge Farris.

3    As with Brook, Judge Ferris determined that Defendant Walker had also committed several

4    violations of the GAL rules, and that her testimony at the August 26, 2015 termination trial was

5    "uniformed, inconsistent, dishonest and biased" and did not assist Judge Farris in making her

6    final determination. Among the conduct Judge Farris identified on the part of Defendant Walker

7    was that Defendant Walker requested Plaintiffs' criminal records, then intentionally sent them to

8    VGAL Brook knowing Brook planned to illegally forward them to the adoption agency

9    representing A.H.'s foster mother in her bid to become A.H.'s permanent guardian. Dkt. 1-1 at 7.

10            In response to Plaintiffs' administrative complaint against Defendant Walker, on

11    November 3, 2015, Defendant Sara Di Vittorio (Defendant Di Vittorio)—an attorney with the

12    civil division of the Snohomish County Prosecutor's Office—wrote a letter to Plaintiff Aradon's

13    attorney on behalf of the VGAL Program, demanding he "cease disclosing" confidential

14    information about VGALs in court filings and in conversations with other members of the legal

15    community, or the VGAL Program would "consider further legal steps." At the end of November

16    2015, the Superior Court notified Plaintiff Aradon's attorney that the administrative complaint

17    against VGAL Walker was deemed unfounded but that it had prompted the Superior Court to

18    reassess and clarify the VGAL Program's complaint procedure.

19            In December 2015, Judge Farris entered an order continuing Plaintiffs' motion to remove

20    Defendant Walker to January 2016, in order to allow the parties time to gather evidence in

21    support of a full evidentiary hearing. Judge Farris also ordered "that the issue of whether the

22    Court's prior termination decision can stand in light of any GAL improprieties found shall not be

23

24

REPORT AND RECOMMENDATION DENYING
PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4

1  heard at the next hearing and shall be set for a date following the entry of final findings on the

2  motion to remove GAL."

3       On January 29, 2016, Judge Farris allowed Defendant Walker to withdraw from the case

4  without a hearing. On February 11, 2016, Judge Farris appointed a new GAL for A.H.

5       In February 2016, Judge Farris also held several evidentiary hearings related to discovery

6  issues and VGAL misconduct. Plaintiffs' attorneys presented evidence that the VGALs resisted

7  liberalized visitation for the parents, argued to impose onerous services on the parents, and

8  engaged in abusive litigation tactics. Judge Farris determined that VGAL staff attorney—

9  Defendant Kirsten Haugen (Defendant Haugen)—proffered untruthful testimony during these

10  hearings. For example, Judge Farris noted Haugen submitted a declaration from VGAL Walker

11  that stated A.H.'s most current allergy testing occurred in 2014. Yet the most current allergy

12  testing actually occurred in 2015 and showed that "the food list pushed by the GAL was

13  preventing [A.H.] from eating foods she could eat, and, more importantly, was failing to warn

14  [that A.H.] should not be fed tree nuts due to potential allergies." Defendant Haugen argued that

15  VGAL Brook's decision to send confidential information about A.H.'s siblings to the foster

16  parent's adoption agency was harmless because the agency had handled the adoptions of all nine

17  of A.H.'s siblings and thus already had the information. The adoption agency's agent later

18  testified that it had, in fact, only handled one sibling's adoption.

19       Finally, Judge Farris found that "abusive litigation tactics were used for improper

20  purposes during these proceedings." Most notably, VGAL Brook's entire hard copy case file,

21  which was in the VGAL Program's possession, "mysteriously disappeared without a trace or any

22  explanation in the middle of post-trial proceedings about misconduct of that VGAL." The VGAL

23  Program also employed "document dumps" during posttrial production to make it hard to find

24

1  information, destroyed or withheld case-related e-mails, and made false or misleading statements

2  to cover up prior misconduct.

3         On March 4, 2016, as a result of the VGAL misconduct that was uncovered during these

4  evidentiary hearings, the parents filed a motion to vacate the decision to terminate their parental

5  rights and for discovery sanctions against the VGALs and the VGAL Program. Judge Farris

6  heard argument and testimony on this motion in late March 2016. On June 10, 2016, Judge Farris

7  orally denied the motion. Although Judge Farris determined that there was "pervasive and

8  egregious" misconduct by the VGALs and the VGAL Program in this case, Judge Farris found

9  that the misconduct "did not affect the verdict and did not prevent a fair procedure."

10        On September 6, 2016, Plaintiffs filed a new motion for sanctions against the VGAL

11  Program, Defendant Haugen, and the Snohomish County Superior Court, requesting substantial

12  sanctions for each discovery violation and false fact presented since October 2015. Snohomish

13  County (represented by Defendant Di Vittorio) opposed the motion, arguing that it was not a

14  party to the termination case and that Judge Farris could not impose sanctions against the

15  Superior Court because Judge Farris was its employee.

16        On September 23, 2016, Judge Farris held a hearing on the sanctions motion.

17        On October 28, 2016, Defendant Di Vittorio moved for Judge Farris to recuse herself

18  from the sanctions portion of the proceeding, arguing that as a member of the Snohomish County

19  Superior Court Judge Ferris had a conflict of interest that prevented her from deciding the

20  motion for sanctions.

21        On November 18, 2016, Judge Farris held a hearing and orally recused herself.

22        Then, on February 17, 2017, Judge Farris held yet another hearing, this time to entertain

23  argument from the parties as to whether it was still possible for her to enter a final written order

24

1  on termination of Plaintiffs' parental rights over A.H., which she said was prepared for her

2  signature prior to her recusal.

3       On May 17, 2017, Judge Farris entered an "Order Regarding Entry of Trial Findings and

4  Order on Recusal" putting her termination decision on the record, and recusing herself from all

5  remaining proceedings. On June 23, 2017, Judge Farris also entered a 317-page memorandum,

6  broken-down into sections, explaining in great detail her reasons for recusing (the Farris

7  memorandum). After Judge Farris entered this order, the Governor appointed Judge T.W. Small

8  (Judge Small) of Chelan County to hear the remaining issues in the termination case.

9       In June 2017, Judge Small considered Plaintiffs' still-pending motions to vacate Judge

10  Farris' termination order and for sanctions against Defendant Haugen and the VGAL program.

11  Judge Small denied all motions. *See, e.g.*, Dkt. 47-3 at 3.

12       Plaintiffs appealed, and the Washington Court of Appeals reversed Judge Small's orders,

13  finding that Judge Farris' determination that the termination case was riddled with ethical

14  conflicts and generally lacked the appearance of fairness was accurate, as were her findings

15  contained in the Farris memorandum regarding the individual Defendants. The Washington

16  Court of Appeals therefore reversed and remanded both the termination order and the orders

17  denying sanctions against Defendant Haugen and the VGAL program. *See Matter of Dependency*

18  *of A.E.T.H.*, 9 Wash. App. at 517 (2019), *cert denied*, *In re A.E.T.H.*, 195 Wash. 2d 1013 (2020).

19       The termination case is presently pending re-trial in King County Superior Court.

20  *Dependency of A.E.T.H.*, King County Superior Court Cause No. 20-7-00809-3, Sea.

21  STANDARD

22       Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

23  file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

24

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586(1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

<u>DISCUSSION</u>

Plaintiffs move for partial summary judgment, seeking to collaterally estop Defendants from relitigating "the due process violation facts found by the Washington Court of Appeals." Dkt. 37 at 5, 8, 11. To that end, Plaintiff seeks to establish, as a matter of law, that Defendants are liable to Plaintiffs pursuant to 42 U.S.C. § 1983, because prior litigation has already determined that Defendants violated Plaintiffs' due process rights. Dkt. 37 at 2. Though not named parties[2] in the prior litigation, according to Plaintiffs "all Defendants were present for the

---

[2] Plaintiffs also argue that the Defendants could have sought to intervene in the Washington Court of Appeals case, but chose not to. They write, "Defendants had every incentive and opportunity to move to intervene at the time of the appeal. They chose not to." Dkt. 64 at 3. Notably, however, Defendant Haugen did move for reconsideration of the Washington Court of Appeals opinion vacating Judge Small's sanctions orders, Plaintiffs objected, and the motion was denied. Dkt. 47-4.

1   termination proceeding" (Dkt. 37 at 17) and were the "moving force" and "laboring oar" in the

2   due process violations, such that this Court should find all Defendants did have their day in court

3   insofar as they assisted "DSHS throughout the dependency, termination, and subsequent appeal."

4   Dkt. 37 at 18.

5        All Defendants[3] contend that Plaintiffs cannot meet the elements required for collateral

6   estoppel[4] to apply. In particular, Defendants maintain the Washington Court of Appeals

7   addressed a different issue from the one at bar, and while that court seemingly accepted many of

8   the findings from the Farris memorandum, it also clearly held that it was improper for Judge

9   Farris to enter the Farris memorandum into the record in the first place as she had already

10  recused herself from the case. *Matter of Dependency of A.E.T.H.*, 9 Wash. App. 2d at 522-25.

11  Moreover, all Defendants insist they were not parties in either the Snohomish County

12

13

14

15      [3] All Defendants move to strike the Declaration of Adam Ballout (Ballout), Plaintiff Aradon's Attorney in
    the dependency and termination proceedings in Snohomish County Superior Court. Dkt. 37-1 at 2; Dkt. 46 at 9; Dkt.
    50 at 2; Dkt. 53 at 12. Only admissible evidence may be considered in ruling on a motion for summary judgment.
16  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). A party may
    object to cited documentation asserting the material cited would not be admissible in evidence. Fed. R. Civ. P.
    56(c)(2). Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would
17  be admissible in evidence, and must show the declarant or affiant is competent to testify on the matters stated. Fed.
    R. Civ. P. 56(c)(4). Objections to evidence because the evidence is irrelevant, speculative, argumentative, vague and
18  ambiguous, or constitutes an improper legal conclusion and is duplicative of the summary judgment standard itself.
    *See Burch v. Regents of University of California*, 433 F.Supp.2d 1110, 1119–20 (E.D. Cal. 2006). To the extent that
    statements in Ballout's Declaration do not meet the requirements of these rules, they will not be considered by the
19  Court. Therefore, Defendants' motions to strike are denied as moot.

20      [4] Defendant Di Vittorio and the County Defendants mistakenly argue Plaintiff seeks to apply offensive
    collateral estoppel. Dkt. 50 at 10. However, offensive collateral estoppel arises when the plaintiff seeks to foreclose
21  the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another
    party. *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) (district court improperly applied offensive collateral
    estoppel from related case to deny defendant's qualified immunity); *see Bates v. Union Oil Co.*, 944 F.2d 647, 651
22  n.2 (9th Cir. 1991) (decision to apply collateral estoppel is reviewed for abuse of discretion and overturned only
    upon showing of clear error of judgment); *Gibson v. United States*, 761 F. Supp. 685, 692 n.12 (C.D. Cal. 1991)
23  (issue preclusion is available not only to defend against demand for relief, but also as offensive support for demand
    for relief).

24

REPORT AND RECOMMENDATION DENYING
PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 9

termination case[5] or the Washington Court of Appeals case, nor were they in privity with any

party in those cases, therefore they never had an opportunity to challenge Judge Farris'

"unchallenged" findings. Thus, Defendants argue they cannot be collaterally estopped from

relitigating issues they have never once litigated. *See* Dkt. 46 at 10-11; Dkt. 50 at 10-15; Dkt. 53

at 4-6, 9.

This Court concurs with Plaintiffs that we must look to state law regarding the preclusive

effect of state court opinions. *See* Dkt. 37 at 9 (citing *Marrese v. American Academy of*

*Orthopaedic Surgeons*, 470 U.S. 373 (1985)("The preclusive effect of a state court judgment in a

subsequent federal lawsuit generally is determined by the full faith and credit statute, which

provides that state judicial proceedings "shall have the same full faith and credit in every court

within the United States ... as they have by law or usage in the courts of such State ... from which

they are taken." 28 U.S.C. § 1738.)).

"'Collateral estoppel, also known as issue preclusion, prevents relitigation of an issue

after the party estopped has had a full and fair opportunity to present its case.'" *Busey v. Wells*

*Fargo Bank NA*, No. 19-5880, 2019 WL 5425505, at *6 (W.D. Wash. Oct. 23, 2019) (quoting

*Barr v. Day*, 124 Wash. 2d 318, 324–25 (1994) (internal quotations and citations omitted)).

Collateral estoppel is "intended to curtail multiplicity of actions, prevent harassment in the

courts, and promote judicial economy" with a goal of judicial finality. *Weaver v. City of Everett*,

194 Wash. 2d 464, 473 (2019). In *Weaver*, the Supreme Court of Washington reaffirmed the four

elements the party asserting collateral estoppel must establish:

---

[5] While some of the Defendants in this case were witnesses in the termination case, the only named parties were the State of Washington (DSHS), and Plaintiffs Aradon, Hayes, and A.H. Dkt. 51 at 7. And when the case was appealed, the Defendants in this case were not involved at all. *Id*. According to Defendant Di Vittorio, Judge Farris stated in an order (not available to this Court) that the County Defendants were not parties to the termination case. Dkt. 51 at 5.

1    (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

4    *Id*. at 474.

5    The Court's analysis begins and ends on the first element. The issue presented in this case

6    centers on whether each named Defendant is guilty of violating Plaintiffs' due process rights

7    guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution. The

8    issue decided in the earlier proceeding, by the Washington Court of Appeals, was whether the

9    order terminating Plaintiff Aradon and Hayes' parental rights to A.H. should be reversed because

10    they were denied a fair trial. *Matter of Dependency of A.E.T.H.*, 9 Wash. App. 2d at 505. In the

11    course of analyzing this issue, the Washington Court of Appeals accepted the findings in the

12    Farris memorandum as "verities" to conclude that Plaintiffs' due process rights were violated

13    during the Superior Court's termination proceedings because the "*tribunal* in which A.H.'s

14    dependency and termination proceedings took place was biased because of the involvement of

15    superior court employees working against the parents in this case." *Id.* at 518 (emphasis added).

16    Although the Washington Court of Appeals paraphrased and quoted portions of the Farris

17    memorandum that reflect unfavorably upon the individual Defendants' roles in the termination

18    proceedings, the issue of whether each individual Defendant violated Plaintiffs' due process

19    rights as guaranteed by the United States Constitution was never raised, contested, or submitted

20    for determination to the Washington Court of Appeals. *See generally*, *Matter of Dependency of*

21    *A.E.T.H.*, 9 Wash. App. 2d 502 (2019). Thus, to the extent Plaintiffs seek to use the Washington

22    Court of Appeals' apparent "adoption" of the extra-judicial findings in the Farris memorandum

23    to establish a section 1983 violation, they must bear in mind Judge Farris' preface, which states:

24

1

2

3

4

5

6

7

8

9

10

11

    \*\*\*NOTE: This Memorandum Decision was written before the Motion to Recuse but not filed and it is not supported by any formal court order adopting this Memorandum Decision because I concluded the need to recuse prevented this court from entering any final order on this Memorandum Decision as to the Motion to Vacate the Verdict and for Attorney Fees. No final order has ever entered on the Motion to Vacate and for Attorney Fees and Sanctions and **this memorandum decision is not a final formal order** on that motion. Any final formal order on those issues, as well as any decision as to whether the grounds for recusal constitute separate grounds to vitiate the verdict must be entered by an out of county judge. This Memorandum Decision is filed **to show what this court's findings would have been but for the recusal** so there is a clear record should it later be determined that an order and findings should have entered and so a determination can be made as to whether the findings were or were not ministerial. It is also filed so there is a clear record of what occurred in this case **and where evidence in the record can be found as to what occurred.** This Memorandum Decision is mostly consistent with the oral decision rendered on June 10, 2016. However, for the reasons stated in the Memorandum on Recusal, this Memorandum Decision does not address Sections E and F as contained in that oral decision. This decision is filed in several parts solely because for practical purposes it was produced in parts so it would be more manageable for editing and filing.

12

Dkt. 37-3 at 1-2 (emphasis added).

13

    As Defendant Haugen points out, when Chelan County Superior Court Judge T.W. Small

14

took up Plaintiffs' motion for sanctions against Defendant Haugen, he made his own findings

15

that called into question whether the Farris memorandum was, in fact, the result of "full and fair"

16

litigation as is required for collateral estoppel to apply. *See, e.g.*, *Nielson By and Through*

17

*Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wash. 2d 255, 264–65 (1998). For instance,

18

Defendant Haugen points to a June 2017 letter from the Washington State Bar Association

19

Office of Disciplinary Counsel, which states:

20

    Judge Small made lengthy findings highly favorable to Ms. Haugen and very different from the findings made earlier by Judge Farris when Ms. Haugen was not afforded an opportunity to defend herself. Judge Small found, for example, that there was no evidence Ms. Haugen ever knowingly provided inaccurate information to the court, that Ms. Haugen had not used abusive litigation tactics, and that most of the allegations against Ms. Haugen had no factual basis. The parties appealed from the termination order and other subsequent orders. Ms. Haugen was not a party to the appeal. The parties to the appeal did not challenge Judge Farris's findings, so the Court of Appeals treated them as verities on appeal

21

22

23

24

REPORT AND RECOMMENDATION DENYING
PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT - 12

without mentioning Judge Small's contrary findings in its opinion. Based on Judge Farris's unchallenged findings, the court reversed the termination order because the proceedings "occurred in a biased tribunal." The court also vacated Judge Small's findings and orders because "[a]lthough [he] was not a judge seated in Snohomish County, he heard oral argument on the motions in Snohomish County and relied on a record generated in that biased tribunal." The court remanded for a new trial outside Snohomish County and said that "any party—should they choose to do so— may … renew the motion for sanctions.

Dkt. 47-1 at 2.

Plaintiffs ultimately appealed Judge Small's order denying their motion to vacate Judge Farris' termination judgment, however, because Plaintiffs did not appeal Judge Small's orders denying their motions for sanctions against Defendant Haugan and the VGAL program (which the Washington Court of Appeals *sue spont*e reversed) notice of appeal was never served upon Defendant Haugen or Defendant Walker. *See* Dkt. 47-3 at 3. Dkt. 51 at 7; Dkt. 54 at 4; Dkt 53 at 4.

Plaintiffs reply that "Defendants' [position they were deprived the opportunity to defend themselves] revolves around the mistaken notion that because they were not formal parties to the termination proceedings, they did not have access to the evidence or opportunity to make arguments to the trial court and court of appeals. *** As the instrumentality of the deprivation of due process rights, defendants have no valid claim that the proceedings below were unfair to them. They were actively involved in and corrupted the fairness of the proceedings below." Dkt. 64 at 3, 8.

Even assuming, *arguendo*, that this statement is true, it does not change that the issues decided by the Washington Court of Appeals were not identical to the issues presented here, and therefore that case does not have preclusive power. *See Shoemaker v. City of Bremerton*, 109 Wash. 2d 504, 507, 745 P.2d 858 (1987)("Collateral estoppel may be applied to preclude only

those issues that have actually been litigated and necessarily and finally determined in the earlier proceeding.").

In sum, this Court finds Plaintiffs have not established as a matter of law that collateral estoppel is appropriate in this case because sufficient evidence exists supporting a factual dispute over whether each named Defendant violated Plaintiffs' due process rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. Therefore, Plaintiffs' motion for partial summary judgment should be denied.

<u>CONCLUSION</u>

Based on the foregoing, the Court recommends DENYING Plaintiffs' Motion for Partial Summary Judgment (Dkt. 37) with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on December 17, 2021, as noted in the caption.

Dated this 1st day of December, 2021.

David W. Christel
United States Magistrate Judge