1

2

3

4

5

6

7

The Honorable Ricardo S. Martinez
The Honorable David W. Christel

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

9

10

11

12

13

14

NYLYSHA STARVION BELAFON
ARADON, CAREY ALLEN HAYES, A.H.,
a minor, A.L., a minor,

                                    Plaintiffs,

        v.

SNOHOMISH COUNTY; et al.,

                                    Defendants.

No. 2:20-CV-01665-RSM-DWC

DEFENDANT KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY
JUDGMENT

Noted for February 11, 2022

15

16

17

18

19

20

21

22

23

## **INTRODUCTION**

The background facts of this case and the dependency involving the minor child A.H. are

accurately described in the declaration of Susan Walker submitted in support of her renewed

motion for summary judgment.  Defendant Kirsten Haugen, a former staff attorney for the Court

Appointed Special Advocate Program in the Snohomish County Superior Court, had a limited

role in that dependency case.  Ms. Haugen did three substantive things in the course of the

dependency action involving A.H.  First, she produced documents in response to a request for

production.  Second, she filed a motion to strike and redact after the termination trial to attempt

to correct errors in Judge Ferris' proposed findings and to redact the name of an uninvolved

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 1
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

volunteer.  Third, Ms. Haugen participated in oral argument before Judge Ferris on that motion and on a motion by the parents to remove the Volunteer Guardian ad Litem for A.H., Susan Walker.

Plaintiffs' Complaint states two causes of action against Ms. Haugen.  First, they allege "abuse of process," citing the 4th Amendment ("prolonged seizure") and the 14th Amendment, procedural and substantive due process.  Second, they allege that she committed the tort of outrage.

These claims fail on summary judgement for six reasons.  First, as the attorney for the Volunteer Guardian ad Litem, Ms. Walker (whose duty was to investigate and advocate for the best interest of the child, A.H.), Ms. Haugen was not a state actor, meaning that Plaintiffs' federal claim against her fails.  Second, if Ms. Haugen is seen as a "state actor," the federal claim fails because she did nothing wrong and nothing that she did in any way affected the case schedule, Judge Ferris' termination order, the timing of that order, or the reality that, over six years after she withdrew from the case, A.H. is still not with the parents.  Third, if Ms. Haugen is viewed as a "state actor," then she is entitled to qualified immunity.  Fourth, Ms. Haugen is entitled to quasi-judicial immunity because she was performing judicial functions at the direction of the Court within a pending court proceeding.  Fifth, the parents' claims are barred by the statute of limitations.  Sixth, the Plaintiffs' state law claim of outrage fails because it is barred by Washington's absolute litigation immunity and because Ms. Haugen did not commit the tort.

For these reasons, Ms. Haugen's renewed motion for summary judgment should be granted.

## STATMENT OF FACTS

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 2
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

This civil case arises out of a still ongoing dependency action filed by the State of Washington in 2013 in Snohomish County in which the State alleged significant deficiencies in Ms. Aradon's and Mr. Hayes' parenting of their child, A.H.  Some of the details of those deficiencies are described in the declaration of VGAL Susan Walker filed in support of her renewed motion for summary judgment.  When the case was filed, Defendant Kirsten Haugen was a staff attorney for the Superior Court's CASA/VGAL Program.  *Second Haugen Dec. at ¶ 1*.  As described below, Ms. Haugen's role in the dependency case was quite limited and she has no copies of, or access to, the confidential court file.  *Id. at  ¶ 6*.

From 1982 to 2020, Ms. Haugen was an attorney for the Court Appointed Special Advocate Program (CASA) in Snohomish County.  *Id. at ¶ 1*.  This Program has also been known as the Snohomish County Volunteer Guardian ad Litem Program (VGAL).  *Id*.  From 1982 to May 1, 1998, she was employed by contract with the county.  *Id*.  From May 1, 1998, until her retirement on December 31, 2019, Ms. Haugen was a full-time employee with Snohomish County in the Superior Court as a VGAL/CASA Program attorney.  *Id*.  Then-Superior Court Robert Bibb had personally recruited her for the position.  *Id*.

The Program was the second of its kind in the country.  *Id. at ¶ 2*.  It followed the first one that was established in King County by then-Superior Court Judge David Soukup.  *Id*.  It ultimately served as the model throughout the United States.  *Id*.  The Program was funded through the Superior Court budget, as was Ms. Haugen's salary.  *Id*.  The Program was established and overseen by the Snohomish County Superior Court bench and remained a court-based program until April 15, 2020.  *Id*.  At that time, the supervision and funding were transferred to the Office of the Snohomish County Executive.  *Id*.

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 3
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

The CASA volunteers, also known as VGALs, are recruited from the community to investigate and advocate for the best interests of children in dependency and termination cases. *Id. at ¶ 3.* They are appointed by court order to perform their statutory tasks for the court. *Id.* They are trained to investigate, monitor, advocate, make recommendations, and report to the judge on the needs and issues regarding children who are the subject of allegations of abuse and/or neglect. *Id.* Their work is designed to assist the judge in making the difficult decisions about what is in the child's best interests, and to make sure the child's voice is heard and considered by the judge and the parties. *Id.*

VGALs are directed by statute to carry out their investigations into the best interests of the child as an arm of the court under RCW 13.34.105. *Id. at ¶ 4.* As for the Program, RCW 13.34.030(13) authorizes the superior courts to establish a volunteer guardian ad litem program "to manage all aspects of volunteer guardian ad litem representation for children alleged or found to be dependent. Such management shall include but is not limited to: Recruitment, screening, training, supervision, assignment, and discharge of volunteers." *Krese Dec. at ¶ 14* (submitted with Snohomish County's motion for summary judgment). In Snohomish County, the VGAL Program performed these functions. *Id.* Further, RCW 13.34.100(5) states that the "guardian ad litem through an attorney, or as otherwise authorized by the court, shall have the right to present evidence, examine and cross-examine witnesses, and to be present at all hearings." *Id.*

Ms. Haugen's job as a CASA/VGAL Program attorney was to fulfil this statutory attorney role on behalf of these volunteers in the court process and, in doing so, assist the assigned judge in making the judicial decisions regarding the best interest of the affected child. *Haugen Dec. at ¶ 4.* That included advising the volunteers about the law, assisting them in responding to discovery requests, presenting their opinions and evidence on their behalf,

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

appearing with and for them in court, and present evidence at court hearings and trials. *Id.* Ms.

Haugen did not represent the State in any way, and she acted completely independent of it. *Id.*

Instead, her job was to represent the volunteers in the court process in their work in supporting

the affected child. *Id.*

At all times that Ms. Haugen worked for the Snohomish County CASA/VGAL Program

it was fully within the Snohomish County Superior Court. *Id. at ¶ 5.* Her ultimate supervising

authority was always the Presiding Judge of the Superior Court. *Id.* Her role was always, and

solely, that of a staff attorney. *Id.* Ms. Haugen was never a supervisor of other CASA/VGAL

Program attorneys, and she had no role in the structure, administration, or management of the

program. *Id.* Policies and procedures for the Program were approved and adopted by the court.

*Id.* From time to time, Ms. Haugen met with the Presiding Judge and the Juvenile Court judges

to discuss the Program, including recruitment of VGALs, training topics for the VGALs, and

other general matters related to administration of the Program. *Id.* Ms. Haugen was not counsel

for the court (the Prosecutor's Civil Division was). *Id.*

Ms. Haugen does not have access to the confidential court file from the A.H. dependency

action that is the subject of this civil lawsuit. *Id. at ¶ 6.* The parents and their attorneys in the

dependency case have always had access to that file. *Id.* However, Ms. Haugen does have a

copy of Judge Small's order from October 11, 2017, in which he made numerous factual findings

about her work and denied the mother's attorney's (Mr. Ballout's) motion for sanctions against

her. *Exhibit 1 to Second Haugen Declaration.* Ms. Haugen knows that Judge Small's order was

later vacated by the Court of Appeals. *Id. at ¶ 6.* She also knows, and knew at the time that the

order was issued, that all of the factual findings that he made were correct and accurately

described her involvement in the A.H. matter. *Id.* While Ms. Haugen has a fairly good memory

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 5
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

1   of the few actions she took in the A.H. dependency case, she does not have a good recollection

2   of the exact dates that she took those actions.  *Id.*  She knows, however, that Judge Small's order

3   accurately detailed those dates.  *Id.*  In her description below of her actions in that case, Ms.

4   Haugen  relies on her memory to describe her actions and relies on Judge Small's order for the

5   dates those actions occurred.  *Id.*

6          Ms. Haugen first appeared as an attorney for the CASA program in the A.H. dependency

7   action on May 7, 2014.  *Id. at ¶ 7.*  During July and August of 2015, she assisted in the

8   compilation of documents in response to pre-trial discovery requests made by ABC Law Group,

9   who represented the mother.  *Id.*  Despite the fact that the requests were untimely, the CASA

10  Program agreed to respond, and agreed on a production deadline with ABC Law Group.  *Id.*  Ms.

11  Haugen split the production responsibilities with fellow staff attorney, Gwen Forrest Reider.  *Id.*

12  Ms. Haugen's portion of the production was produced on time, along with a written description

13  of the documents and corresponding Bates numbers for the documents she produced.  *Id.*  Ms.

14  Haugen believes that Ms. Reider's productions were produced one day late, without objection

15  from ABC Law Group.  *Id.*  The documents were produced through an online portal,

16  www.box.com.  *Id.*  Ms. Haugen uploaded the documents that she was responsible for producing,

17  along with the Bates numbers, and sent the access information to ABC Law Group.  *Id.*

18         Ms. Haugen was told later that during the termination trial (in which she was not

19  involved), that ABC Law Group claimed they had not accessed 997 pages of the documents that

20  had been produced via www.box.com.  *Id.*  None of those 997 bates numbers were within the

21  documents that Ms. Haugen had produced for them.  *Id.*

22         The termination trial was held on August 26 through September 2, 2015.  *Id. at ¶ 8.*

23  Again, Ms. Haugen had no involvement in that trial.  *Id.*  After the trial, Judge Ferris *sue sponte*

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 6
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

1    issued a second set of discovery requests to the Program.  *Id.*  Ms. Haugen had no role in

2    responding to those new requests, other than informing the VGAL Program of Judge Ferris'

3    order.  *Id.*

4           On November 2, 2015, Ms. Haugen filed a motion to strike and redact.  *Id. at ¶ 9.*  One of

5    the reasons she filed those motions was because she believed that, based on her review of the

6    trial transcript with Ms. Walker, that Judge Ferris had made significant factual errors in her

7    proposed findings in support of termination.  *Id.*  A primary issue for them was that Judge Ferris'

8    proposed findings attributed acts to Ms. Walker that were done by the previous VGAL, Ms.

9    Brook.  *Id.*  Ms. Walker wanted those errors corrected and they felt it was important that the

10   record be accurate.  *Id.*  Also, ABC Law Group had made allegations against another VGAL who

11   had accessed the Washington Defender Association listserv.  *Id.*  That VGAL was not involved

12   in the A.H. litigation, yet Judge Ferris made proposed findings against her and the Program that

13   had nothing to do with the case.  *Id.*  Therefore, Ms. Haugen moved to redact the name of the

14   volunteer because these allegations had nothing to do with the A.H. case.  *Id.*

15          Ms. Haugen learned later that a witness declaration that she submitted to support the

16   motion contained an error.  *Id. at ¶ 10.*  She does not recall the name of the witness or the error.

17   *Id.*  She does know that as soon as she learned of the error that she promptly filed a second

18   declaration of the witness to correct it.  *Id.*  Judge Small's order indicates that this second filing

19   was on November 24, 2015.  *Id.*

20          On December 1 and 3, 2015, Ms. Haugen participated in oral argument before Judge

21   Ferris on the Motions to Strike and Redact and the Mother's Motion to Remove Ms. Walker as

22   the VGAL.  *Id. at ¶ 11.*  During the argument, it became apparent that Judge Ferris was focusing

23   to a large degree on the allegations that ABC Law Group was making about the structure of the

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 7
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

1   VGAL program within the Superior Court, and other allegations that Ms. Haugen was not in a

2   position to speak to.  *Id.*  It was also clear that Judge Ferris was very upset with the Program and

3   its structure.  *Id.*  This put Ms. Haugen in an awkward position because, as a staff attorney, it was

4   not her role to defend the decades' long structure of the CASA Program in the Superior Court.

5   *Id.*  That was the job of the Presiding Judge and others.  *Id.*  Ms. Haugen believes that every

6   statement she made in that argument was true and consistent with her obligations as an officer of

7   the Court.  *Id.*

8          After the oral argument on that motion before Judge Ferris, Ms. Haugen became

9   concerned that she had a conflict of interest, and she withdrew from the case in January 2016.

10  *Id. at ¶ 12.*  That was the end of her involvement in representation of the VGAL in the A.H

11  dependency action.  *Id.*  Judge Ferris' termination order was not issued until months after Ms.

12  Haugen withdrew.  *Id.*

13         The Plaintiffs' Complaint alleges that Ms. Haugen "thwarted discovery" in A.H.'s case,

14  and that she implemented a policy of making discovery productions more expensive for ABC

15  Law Group than for other attorneys.  *Id. at ¶ 13.*  They also allege that she deliberately produced

16  repetitive documents, required them to be view documents at the Program's offices, and that they

17  be supervised to view documents.  *Id.*  Ms. Haugen did none of these things.  *Id.*  The discovery

18  that she produced on the A.H. case was produced at no charge to any of the parties, provided to

19  them electronically, accessed by them electronically from a site of their choosing via their

20  computers, and did not require review or supervision in the CASA/VGAL office.  *Id.*  In the

21  discovery that was provided by Ms. Haugen, there were repetitive documents produced in the

22  form of e-mail chains.  *Id.*  That was because each time a person added to the chain, the system

23  produced the chain in full.  *Id.*  At the time, Snohomish County did not have software to produce

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 8
2:20-cv-01665-RSM-DWC

the chains any other way, meaning that there a lot of emails that were produced multiple times. *Id.* There was also repetitive discovery produced when the volunteers and Program coordinators copied each other or forward information to each other per Program policy. *Id.* All discovery provided by Ms. Haugen on this matter was produced in the manner that it was kept in the usual course of business and ordinarily maintained by Snohomish County, and in accordance with the rules of discovery and agreement of the parties. *Id.* Other than this one production, Ms. Haugen did not respond to any other document requests in the matter of A.H. *Id.*

The Plaintiffs' Complaint alleges that after ABC Law Group filed a complaint about the Program, that the Program retaliated against the firm by contacting the Office of Public Defense to try to jeopardize the firm's funding. *Id. at ¶ 14.* Ms. Haugen did not contact the Office of Public Defense and never did anything to try to jeopardize the firm's funding. *Id.*

The Plaintiffs' Complaint also alleges that Ms. Haugen committed discovery violations and that this had the effect of prolonging A.H.'s dependency and removal from her parents. *Id. at ¶ 15.* Ms. Haugen did one pre-trial discovery production in the case (detailed above). *Id. at ¶ 7.* She did not commit any discovery violations and nothing that she did prolonged the dependency in any way. *Id. at ¶ 15.* Ms. Haugen had no input or effect on Judge Ferris' order of termination or the timing of that order. *Id.*

The parents' allegations that Ms. Haugen violated their constitutional rights by somehow delaying the trial and causing their parental rights to be terminated is false. *Id. at ¶ 16.* Ms. Haugen had no role in the scheduling of the dependency and termination actions. *Id.* Ms. Haugen did not set the case schedule. *Id.* She never did anything that delayed the trial date. *Id.* The two court hearings that Ms. Haugen had on the case were the arguments on the motion to strike and redact and to remove Ms. Walker as VGAL. *Id.* Those were held after the

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 9
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

1    termination trial and the dates for the hearings were set by Judge Ferris' law clerk. *Id.*

2    Therefore, the allegation that Ms. Haugen somehow caused a delay in the termination order is

3    false. *Id.* Instead, the scheduling decisions were made between the State, the parents, and the

4    Court. *Id.*

5        Judge Ferris' termination order was solely a result of her independent judicial decision.

6    *Id. at ¶ 17.* Ms. Haugen did not participate in the trial, never advocated for termination during

7    the trial or post-trial, and did nothing that impacted Judge Ferris' independent judicial decision to

8    terminate the parents' rights. *Id.*

9        Ms. Haugen did not violate the parents' or A.H.'s constitutional rights in any other ways.

10   *Id. at ¶ 18.* The few actions that Ms. Haugen took in the dependency action were taken after

11   reasonable inquiry, and she believes that everything that she wrote in pleadings and said in court

12   was true. *Id.* Ms. Haugen also believes that she always acted in compliance with the court rules

13   and the Rules of Professional Conduct. *Id.*

14       Ms. Aradon's attorney, Mr. Ballout, and his firm have been making the same accusations

15   that are made in this case against Ms. Haugen regarding the A.H. case since 2015. *See e.g., Dkt.*

16   *49 at ¶ 4.* They filed a motion or sanctions against her in 2015 that was based on the same type

17   of complaints they make in this case. *Id.* Because the dependency court files are confidential,

18   Ms. Haugen cannot produce a copy of that motion or her responses to it. *Id. at ¶ 6.* Regardless,

19   the unfounded complaint Mr. Ballout and ten other attorneys made to the Washington State Bar

20   Association on December 1, 2016 suffices to show the parents' knowledge of Ms. Haugen's

21   claimed wrongs. *Dkt. 47-5.* That Bar complaint states the following:

22       Dear WSBA Office of Disciplinary Counsel:

23

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 10
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

Our community of defense attorney's maintains significant ethical concerns over the conduct of Ms. Kirsten Haugen WSBA# 8462 and we hereby collectively submit this bar complaint for investigation of:

- Abusive litigation tactics
- Submitting perjured testimony to a court
- Violating the RPC's mandating fairness to opposing counsel
- Violating the RPC's mandating candor towards the tribunal
- Violating the RPC's regarding conflicts of interest
- All other ethical violations outlined by the court and found by the bar association after investigation.

*Id.* The attorneys attached transcripts from the A.H. case.

As shown by their motions for sanctions and the December 1, 2016 Bar complaint, the parents' attorneys were well aware of their complaints about her in 2015. Ms. Haugen denies these allegations and the Bar dismissed the complaint. *Dkt. 49 at ¶ 4.*

## ARGUMENT

### A. Plaintiffs' federal claim against Ms. Haugen for "abuse of process" fails because she was not a state actor, and if she was a state actor, she committed no constitutional deprivation and has qualified and quasi-judicial immunity.

Plaintiffs' sixth cause of action in their Complaint is a federal civil rights claim for "abuse of process" against Snohomish County, Ms. Haugen, and Ms. Di Vittorio. The theory is that these Defendants violated the Fourth Amendment ("Prolonged Seizure") and the Fourteenth Amendment ("Procedural Due Process and Substantive Due Process"). The core of the factual allegations against Ms. Haugen are that she deliberately and repeatedly misused the discovery process to punish the parents' attorneys because they were complaining about the structure of the CASA program within the Superior Court.

The federal claim against Ms. Haugen fails for four reasons. First, Ms. Walker's renewed motion for summary judgment correctly shows that she was not a "state actor," essentially because her sole mission was supporting the best interests of the child and she was not acting for

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 11
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

the State.  Similarly, Ms. Haugen's sole mission was representing Ms. Walker in that narrow

mission.  Therefore, Ms. Haugen was not a "state actor" subject to 42 U.S.C. §1983.

Second, if Ms. Haugen was a state actor, she did not commit any constitutional

violations.

Third, if Ms. Haugen was a state actor, she is entitled to qualified immunity.

Fourth, Ms. Haugen is entitled to quasi-judicial immunity.

> 1.  <u>Ms. Haugen was not a "state actor" because she was serving the best interests of the child through her representation of the VGAL, not the interests of the State</u>.

Defendant Susan Walker correctly argues in her renewed motion that, as a statutory

VGAL serving the best interests of the child, that she was not a state actor, relying on *Kirtley v.

Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).  A GAL's duties are set forth in RCW 13.34.105.

They include investigating and collecting relevant information about the child's situation and

reporting factual information to the court with regard to the child's best interests.  RCW

13.34.105(1)(e) provides that the GAL "may make recommendations based upon an independent

investigation regarding the best interests of the child, which the court may consider and weigh in

conjunction with the recommendations of all the parties."

To assist the GAL in this role for the child, RCW 13.34.030(13) authorizes the superior

court to establish a volunteer guardian ad litem program "to manage all aspects of volunteer

guardian ad litem representation for children alleged or found to be dependent.  Such

management shall include but is not limited to: Recruitment, screening, training, supervision,

assignment, and discharge of volunteers."  *Krese Dec. at ¶* 14.  In Snohomish County, the

VGAL Program performed these statutory functions.  *Id*.

RCW 13.34.100(5) states that the "*guardian ad litem through an attorney*, or as

1  otherwise authorized by the court, shall have the right to present evidence, examine and cross-

2  examine witnesses, and to be present at all hearings." (Emphasis added.) This was Ms.

3  Haugen's sole mission in this case: assisting Ms. Walker as an attorney through the court

4  process so that Ms. Walker could ably present to the Court what was, in her opinion, in the best

5  interests of A.H. *Haugen Dec. at ¶ 4.*

6         In determining whether an individual is a "state actor" that is acting in furtherance of the

7  State, the *Kirtley* Court looked to four criteria: "(1) public function; (2) joint action; (3)

8  governmental compulsion or coercion; and (4) governmental nexus." *Kirtley* at 1092.

9         First, as to "public function," the Ninth Circuit determined that because the GAL's role

10  was to "advocate for the best interest of the child" and be "an independent source of information

11  for the court," neither of which was a traditional or exclusive governmental function, that the

12  public function criterion was not met. *Id.* at 1093. The same is true for Ms. Haugen – her sole

13  mission was to help the volunteer guardians ad litem through the court process so they could

14  fulfill their statutory and court-ordered obligations to present to the Court what they believed to

15  be in the child's best interests. *Haugen Dec. at ¶ 4.*

16         Second, as to "joint action," the Court considered "whether the state has so far

17  insinuated itself into a position of interdependence with the private entity that it must be

18  recognized as a joint participant in the challenged activity." *Kirtley* at 1092 (quoting *Parks Sch.*

19  *Of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995)). The Court found a lack of joint

20  action even though the GAL was paid by the state or even if the GAL's judgment corresponded

21  with the state's interest. *Id.* Similarly, Ms. Haugen and Ms. Walker took no "joint action" with

22  the State.

23          The *Kirtley* Court also relied on the GAL's statutorily defined duties to find that neither

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 13
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

1   the "compulsion" nor the "nexus" criteria were met.  *Id*. at 1094-1095.  The same is true as to

2   VGAL Walker and as to Ms. Haugen, who was authorized by statute and the court to assist Ms.

3   Walker through the court process in order to help Ms. Walker fulfill her statutory duties to the

4   child.  RCW 13.34.100(5).

5        In *Kirtley*, the Ninth Circuit stated the following when analyzing the "joint function"

6   test:

> The Supreme Court has held that a public defender does not act under color of state law when performing pure advocacy functions, *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), and the Tenth Circuit has relied on the analogy between public defenders and guardians to hold explicitly that guardians do not act under color of state law for § 1983 purposes.  *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir.1986) (no obligation or duty to the state, but undivided loyalty to the minor).  *Meeker* goes on to observe that even where the judgment of the guardian exercised on behalf of the minor corresponds with the state interest in child care, it is the independence of the guardian that insulates the role from § 1983 liability.  *Id.*  The significance of this independence is underscored by the difficulty we have in seeing how any unconstitutional act by the guardian would possibly provide benefits to the state.  Taken together, they indicate that the joint action test is not satisfied with respect to the guardian's functions as an advocate.

Similar to a public defender and a GAL, Ms. Haugen's complete independence from the State "insulates the role from § 1983 liability."  Therefore, Plaintiffs' federal claim against her fails.

       2.  <u>If Ms. Haugen was a state actor, she did not commit any constitutional violations</u>.

Plaintiffs allege that Ms. Haugen violated the Fourth Amendment based on a "prolonged seizure."  An unconstitutional "prolonged seizure" under the Fourth Amendment occurs when a government official continues to hold a person after the original legal justification for the seizure ceases to exist.  *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017) ("The exigency that justified the seizure vanished once the vehicle arrived in impound and Brewster showed up with

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 14
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

proof of ownership and a valid driver's license'..."). It appears to be the Plaintiffs' theory that Ms. Haugen committed a "prolonged seizure" by supposedly delaying the dependency case, thereby preventing A.H. from being reunited with her parents. There are many problems with this theory.

First, Ms. Haugen did nothing to delay the dependency and termination cases. *Haugen Dec. at ¶¶ 15, 16.* She had no role in the termination trial. *Id. at ¶ 8.* She did not set any of the schedules – the State, the parents' attorneys and the Court did that. *Id. at ¶ 16.* And she did nothing to delay the proceedings. *Id.*

Second, Ms. Haugen had no role Judge Ferris' decision to terminate – that was Judge Ferris' independent judicial decision. *Id. at ¶ 17.* And Ms. Haugen had no role in Judge Ferris' months-long delay in issuing her termination order after the trial. *Id. at ¶ 15.*

Third, Ms. Haugen did nothing wrong in the three actions she took in the case – a production of documents, filing a motion to strike and redact, and arguing on that motion and the mother's motion to remove Ms. Walker. *Id. at ¶¶ 7-11.*

Fourth, it has now been over six years since Ms. Haugen took her last substantive act in the matter. *Id. at ¶ 11.* The dependency is still ongoing and A.H. has apparently still not been reunited with her parents. That has noting to do with Ms. Haugen. If Ms. Haugen had taken unconstitutional acts that had caused an improper termination, then once she withdrew from the case the termination would have been promptly reversed. That has not happened.

Plaintiffs also make procedural and substantive due process claims under the Fourteenth Amendment against Ms. Haugen. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Armstrong v.*

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 15
2:20-cv-01665-RSM-DWC

1   *Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).  Ms. Haugen did nothing

2   to violate the Plaintiffs' procedural due process rights.  *Haugen Dec. throughout.*

3   　　　As to the substantive due process claim, the Fourteenth Amendment's Due Process

4   Clause protects parents' well-established liberty interest in the "companionship, care, custody,

5   and management of [their] children."  *See Lassiter*, *v. Dep't of Social Serv. of Durham County,*

6   *N.C.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).  This right is not reserved just for

7   parents with full legal and physical custody but extends to parents with merely visitation rights --

8   "ah liberty interest in the companionship, care, custody, and management of their children," even

9   though such a parent's right is "unambiguously lesser in magnitude than that of a parent with full

10  legal custody."  *Brittain*, 451 F.3d 982, 992 (9th Cir. 2006).  "[T]he cognizable level of executive

11  abuse of power [for a substantive due process violation] is that which shocks the

12  conscience[.]");..."  *County of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998).  Ms. Haugen did

13  nothing to violate Plaintiffs' substantive due process rights and did nothing to "shock the

14  conscience."  *Haugen Dec. throughout.*

15  　　　As set forth in Ms. Haugen's declaration filed with this motion, she took three acts in her

16  representation of VGAL Walker.  She made a document production, she filed and argued a

17  motion to strike and redact, and she argued on that motion and on the mother's motion to remove

18  Ms. Walker.  *Id.* at ¶¶ *7-11.*  Ms. Haugen did nothing wrong in these acts and she did nothing to

19  violate Plaintiffs' procedural or substantive due process rights.  *Id. at ¶¶ 7-11; 13-18.*

20  　　　　　　3.   If Ms. Haugen was a state actor, she is entitled to qualified immunity.

21  　　　 Qualified immunity protects public officials from liability "insofar as their conduct does

22  not violate clearly established statutory or constitutional rights of which a reasonable person

23  would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 16
2:20-cv-01665-RSM-DWC

1   (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)

2   ).  There is a presumption that the public official is entitled to qualified immunity; in order to

3   defeat it, a plaintiff must produce facts that rebut the presumption of the officer's immunity from

4   suit.  *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001).  "The defense of qualified

5   immunity gives public officials the benefit of legal doubts."  *Donovan v. City of Milwaukee*, 17

6   F.3d 944, 951 (7th Cir. 1994) (internal quotation marks omitted).

7          A plaintiff has the burden of showing that (1) the official violated a constitutional or

8   statutory right; and (2) the right was clearly established when the alleged violation occurred.

9   *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002); *Martinez v. Beggs*, 563 F.3d

10  1082, 1088 (10th Cir. 2009).  A court may address these prongs in either order.  *Pearson*, 555

11  U.S. at 236.  But a plaintiff must satisfy both in order to avoid qualified immunity.  *Olsen*, 312

12  F.3d at 1304.

13         A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a

14  reasonable official would understand that what he is doing violates that right."  *Anderson v.*

15  *Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  The action at issue need

16  not have been previously declared unlawful, but its unlawfulness must be evident in light of

17  preexisting law.  *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005).  Unlawfulness is

18  generally demonstrated "when there is controlling authority on point or when the clearly

19  established weight of authority from other courts supports plaintiff's interpretation of the law."

20  *Id.* at 1069-70 (internal quotation marks omitted).  "A prior case need not have identical facts,"

21  *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017), but the precedent must make it clear "to every

22  reasonable officer ... that what he is doing violates that right."  *Mullenix v. Luna*, 577 U.S. 7, 136

23  S. Ct. 305, 308, 193 L.Ed.2d 255 (2015) (internal quotation marks omitted).  The plaintiff bears

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 17
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

the burden of identifying "a controlling case or robust consensus of cases" where an official

acting "under similar circumstances" to those faced by the defendants was found to have acted

unlawfully. *D.C. v. Wesby* , ─── U.S. ───, 138 S. Ct. 577, 591, 199 L.Ed.2d 453 (2018); *Quinn*

*v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015).

Ms. Haugen is entitled to qualified immunity.  There is no "controlling case or robust

consensus of cases" that establishes that an attorney properly producing documents in discovery

and properly filing and arguing motions in court violates any constitutional or statutory right that

was clearly established when the alleged violation occurred.  Plaintiffs cannot meet their burden

to rebut the presumption of qualified immunity and Ms. Haugen should be afforded that

immunity.

4.   Ms. Haugen is entitled to quasi-judicial immunity.

People performing judicial functions at the direction of a court are entitled to absolute

quasi-judicial immunity. *Meyers v. Contra Costa County Dept. of Social Services,* 812 F.2d

1154, 1159 (9th Cir. 1987) (affirming the grant of absolute quasi-judicial immunity to two

employees of the Family Conciliation Court).   "Absolute immunity is lost only if [the] actions

were 'clearly and completely outside the scope of [the person's] jurisdiction." *Id.,* quoting

*Demoran v. Witt,* 781 F.2d 155, 158 (9th Cir. 1985) (granting absolute immunity to probation

officer reporting to the court).

Ms. Haugen was employed by the Snohomish County Superior Court, with her ultimate

supervisor being the Presiding Judge. *Haugen Dec. at* ¶ 5.  She was a staff attorney for the

Court, and it was her job to represent and assist volunteer guardians ad litem in dependency and

termination actions. *Id. at* ¶¶ *4, 5.*  As accurately described in VGAL Ms. Walker's renewed

motion for summary judgment, a VGAL's sole mission as a court-appointed volunteer is to

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 18
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

1   support the involved child to assist the assigned judge in making the judicial determination of

2   what is in the best interest of the child.

3        More specifically, in this case, Ms. Haugen performed three tasks to support Ms.

4   Walker's role of serving the best interests of the child, and, through extension, serving A.H. and

5   Judge Ferris: she responded to discovery for Ms. Walker, she filed a motion on her behalf, and

6   she argued that motion and against a motion to remove Ms. Walker. *Id. at ¶¶ 7-11.* Under the

7   analysis on *Meyers*, Ms. Haugen is entitled to absolute quasi-judicial immunity for these acts.

8        In *Meyers,* the plaintiffs were David Meyers, his children and his parents.  Like here,

9   their claims included civil rights claims against government defendants working for a court,

10   claiming (among other things) that those defendants had deprived them of their liberty interests

11   before and during family court proceedings.

12        Two of the defendants were Allison and Crossley.  Allison was an "associate counselor"

13   of the Family Reconciliation Court.  Crossly was a "supervising counselor" of that Court.  They

14   were both employees of the court and their duties were set forth by statute.  Their duties included

15   mediation of custody and visitation disputes, investigating matters pertaining to such disputes,

16   and providing reports to the courts.

17        In the Meyers parenting dispute litigation, the involved adults participated in counseling

18   sessions with Allison "under the auspices of the Family Conciliation Court."  During that

19   timeframe, the mother, Amy Meyers, allegedly told Allison that David Meyers had committed

20   child abuse.  The plaintiffs further alleged that David and Amy attended a mandatory

21   conciliation session with a counselor form the court and that, upon learning of the session, that

22   Allison "induced" Crossley to reassign the case to her "in spite of her bias against David."

23

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 19
2:20-cv-01665-RSM-DWC

The plaintiffs also alleged that Allison later refused to arrange for visitation for David in willful violation of a court order requiring her to arrange such visits.  Finally, the plaintiffs alleged that Crossly and Allison visited the foster parents with whom the children resided "to induce them to refuse David and his parents the right to see the children."

On summary judgment, the district court held that Allison and Crossly were officers of the court "performing judicial functions at the direction of a court" and that they were entitled to absolute quasi-judicial immunity.  *Meyers* at 1158.  The Ninth Circuit affirmed, citing to *Sharma v. Stevas,* 790 F.2d 1486, 1486 (9th Cir. 1986) (clerk of the United States Supreme Court); *Demoran v. Witt,* 781 F.2d 155, 158 (9th Cir. 1985) (probation officers); *Sellars v. Procunier,* 641 F.2d 1295, 1303 (9th Cir. 1981) (parole officers).

In affirming the grant of quasi-judicial immunity, the Ninth Circuit stated as follows:

> Allison and Crossley were performing a judicial function at the direction of a court.  The controversy involved a pending case to which they had been assigned, and the events at issue arose directly and immediately out of a confrontation between the defendants and parties in that case.  The allegations that Allison and Crossley refused to allow David visitation rights and attempted to bias the foster parents are not materially different from the allegation that a judge and prosecutor conspired to deprive a prisoner of effective counsel and access to legal materials.

*Meyers* at 1158.

Similarly, Ms. Haugen was "performing a judicial function at the direction of a court." She was an employee of the court, and her sole function was to assist court-appointed volunteer guardians ad litem for the affected child through the dependency court process.  Further, the VGAL was an officer of the court, appointed by the court to investigate what was in the best interests of the child, and to inform the assigned judge what she believed those interests were. With this information, the judge was then in a more informed position to make her statutorily mandated judicial rulings regarding what was in the best interests of the child.  All functions of

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 20
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

1    Ms. Haugen were done at the direction of the court, involved a pending case, and all claims

2    against her "arose directly and immediately out of" disputes between the parties to the case.  For

3    these reasons, Ms. Haugen is entitled to quasi-judicial immunity.

4        **B.      The parents' federal and state law claim against Ms. Haugen are barred by
                    the statute of limitations.**

5

6        The parents' claims against Ms. Haugen are barred by the 3-year statutes of limitations

7    because the last act she took in their case was in 2015 and they did not commence this action

8    until 2020.  *See Dkts. 49 and 1-1.*  Statutes of limitations are absolute bars to suit.  *Nottingham v.*

9    *Richardson,* 499 Fed.Appx. 368, 375 (5th Cir. 2012).  There is no designated statute of

10   limitations for actions brought under 42 U.S.C. § 1983.  *Jackson v. Johnson,* 950 F.2d 263, 265

11   (5th Cir. 1992).  Therefore, courts must borrow the forum state's limitations period for personal

12   injuries, including the state's provisions on tolling, as long as application of the rules does not

13   undermine the goals of the federal statute at issue.  *Id.*  Washington's statute of limitations for

14   personal injuries is 3 years.  RCW 4.16.080.

15       All of the parents' federal claims are barred for the reasons set forth in *Belanus v. Clark*,

16   796 F.3d 1021, 1025 (9th Cir. 2015):

17                 Federal law determines when a cause of action accrues and when the statute of
                   limitations begins to run for a § 1983 claim.  *Wallace v. Kato*, 549 U.S. 384, 388,
18                 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (noting that "the accrual date of a § 1983
                   cause of action is a question of federal law"); *Pouncil v. Tilton*, 704 F.3d 568, 573
19                 (9th Cir. 2012) (stating that "[f]ederal law determines when a cause of action for a
                   Section 1983 claim accrues and, hence, when the statute of limitations begins to
20                 run").  "Under federal law, a cause of action accrues when the plaintiff knows or
                   has reason to know of the injury that is the basis of the action."  *Kimes v. Stone*,
21                 84 F.3d 1121, 1128 (9th Cir.1996); *Pouncil*, 704 F.3d at 574.  Thus, "[a]n action
                   ordinarily accrues on the date of the injury."  *Id.*

22

23

In *Belanus*, the 9th Circuit found that Balanus' claim was time barred because he "knew of his cause of action well within the three-year statute of limitations."  In making this ruling, the Ninth Circuit wrote that:

> **federal law holds that a cause of action for illegal search and seizure accrues when the wrongful act occurs**, *Venegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir.1983), **even if the person does not know at that time that the search was warrantless**. *See Kuan v. U.S. Customs Service*, No. CV 08–1980–DDP (MAN), 2009 WL 6340016, at *5 (C.D.Cal. Dec. 16, 2009).

*Belanus* at 1026 (emphasis added).

The last substantive act that Ms. Haugen took in the Aradon dependency case occurred in 2015.  *Haugen Dec. at* ¶ 11.  As shown by their 2015 motion for sanctions and 2016 Bar complaint, the parents and their attorneys were well aware of Ms. Haugen's actions in 2015, meaning that the statute of limitations for their claims ran in 2018.  Their federal claim is two years late and are time-barred.

Their state law claim is also time-barred.  Under Washington law, "[t]he general rule is 'that a cause of action accrues, and the statute of limitations begins to run, when a party has the right to apply to a court for relief.'  *Haslund*, 86 Wash.2d at 619, 547 P.2d 1221."  *Mohandessi v. Urban Venture LLC*, 13 Wn. App.2d 681, 468 P.3d 622, (2020).  The parents had the "right to apply to a court for relief" as to Ms. Haugen in 2015.  Indeed, they "applied for relief" in their sanctions motion in 2015 and in their attorneys' Bar complaint in 2016.  Therefore, the parents' state law claim is also barred by the statute of limitations.

## C.   The Plaintiffs' outrage claim against Ms. Haugen is barred by Washington's absolute litigation privilege and the claim fails on its merits.

The actions complained of by the Plaintiffs regarding Ms. Haugen all arise from her alleged actions within the dependency action.  *See Dkts. 1-1 and Haugen Dec. at* ¶ *19* ("Every action that I took in the Aradon dependency was taken . . .  as an attorney engaging in

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 22
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

litigation.").  In Washington, attorneys have an absolute litigation immunity from lawsuits based on their actions in judicial proceedings.  *McNeal v. Allen,* 95 Wn.2d 265, 267, 621 P.2d 1285 (1980).  Applying this privilege to attorneys is "based upon a public policy of securing to them as officers of the court the utmost freedom in their efforts to secure justice for their clients."  95 Wn.2d at 267.  The Plaintiffs' state law claim for "outrage" arises wholly out of Ms. Haugen's role as a litigator in the dependency case.  Therefore, their outrage claim against Ms. Haugen is barred by absolute litigation immunity.

Additionally, the outrage claim fails on its merits.  To prevail on an outrage claim, also known as intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant engaged in extreme and outrageous conduct, (2) the defendant intentionally or recklessly inflicted emotional distress on the plaintiff, and (3) the conduct actually resulted in severe emotional distress to the plaintiff.  *Kloepfel v. Bokor*, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). "Any claim of outrage must be predicated on behavior 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' "  *Strong v. Terrell*, 147 Wn. App. 376, 385–86, 195 P.3d 977 (2008) (emphasis omitted) (internal quotation marks omitted) (quoting *Kloepfel*, 149 Wn.2d at 196, 66 P.3d 630).

While the elements of outrage are often factual questions for the jury, a trial court faced with a summary judgment motion must "make an initial determination as to whether the conduct may reasonably be regarded as so 'extreme and outrageous' as to warrant a factual determination by the jury."  *Doe v. Corp. of the President of the Church of Jesus Christ of Latter–Day Saints*, 141 Wn. App. 407, 429, 167 P.3d 1193 (2007) (internal quotation marks omitted) (quoting *Jackson v. Peoples Fed. Credit Union*, 25 Wn. App. 81, 84, 604 P.2d 1025 (1978)).

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

1    Also, to prevail on an outrage claim, a plaintiff is required to produce evidence that he or

2    she actually suffered severe emotional distress as a result of the defendant's conduct. *Kloepfel*,

3    149 Wn.2d at 203. " 'Emotional distress' includes 'all highly unpleasant mental reactions, such

4    as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment,

5    worry, and nausea.' " *Id.* (quoting Restatement (Second) of Torts § 46, cmt. j).  However,

6    liability arises only when the emotional distress is extreme.  Restatement (Second) of Torts § 46,

7    cmt. j.  There must be more than " 'transient and trivial emotional distress.' " *Kloepfel*, 149

8    Wn.2d at 198 (quoting Restatement (Second) of Torts § 46, cmt. j).  Nevertheless, because

9    outrage is an intentional tort the plaintiff need not show bodily harm or objective

10   symptomatology.  *Id.*

11   There was nothing "outrageous" about the three actions Ms. Haugen took in the case

12   involving A.H.  And Plaintiffs have not produced a single document, expert report or any

13   evidence showing emotional distress caused by Ms. Haugen, much less the "extreme" emotional

14   distress required.  Therefore, Plaintiffs' outrage claim fails.

15   ## CONCLUSION

16   Plaintiffs' federal claim against Ms. Haugen fails because she was not a "state actor," did

17   not commit any constitutional deprivations, and she is entitled to qualified and quasi-judicial

18   immunity.  The parents' claims are also barred by the statute of limitations.  And the outrage

19   claim by all Plaintiffs' fails because of the litigation privilege and on its merits.  For these

20   reasons, Ms. Haugen's renewed motion for summary judgment should be granted and all the

21   claims asserted against her should be dismissed with prejudice.

22

23

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627

1    DATED this 20th day of January, 2022.

2

3    By: /s Kristofer J. Bundy
     Kristofer J. Bundy, WSBA #19840
     Attorney for Defendant Kirsten Haugen
4    Bundy Law Group, PLLC
     P.O. Box 2543
5    Bellingham, WA 98227
     Phone: (206) 372-3627
6    E-mail: kris@bundylawgroup.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 25
2:20-cv-01665-RSM-DWC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**CERTIFICATE OF SERVICE**

I hereby certify that on the below date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

DATED:  January 20, 2022

*/s/ Kristofer J. Bundy*
Kristofer J. Bundy, WSBA #19840

DEFENDANTS' KIRSTEN HAUGEN'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 26
2:20-cv-01665-RSM-DWC

KRISTOFER J. BUNDY
Bundy Law Group PLLC
PO Box 2543
Bellingham, WA 98227
(206) 372-3627