UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NYLYSHA STARVION BELAFON
ARADON, et al.,

                    Plaintiff,

        v.

SNOHOMISH COUNTY, et al.,

                    Defendant.

CASE NO. 2:20-CV-1665-RSM-DWC

ORDER RE PLAINTIFFS' MOTION
FOR SANCTIONS

     The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently before the Court is Plaintiffs' Renewed Motion Pursuant to Federal Rule of Civil Procedure 37(e) for Sanctions Against Defendants Susan Walker and Snohomish County[1] for Spoliation of Evidence. Dkt. 186.

     The Court notes that additional motions remain pending and will be addressed separately. *See*, Dkts. 182, 188, 191, 192.

---

[1] Defendants Kirsten Haugen and Sara Di Vittorio are not implicated in this motion.

<u>BACKGROUND</u>

On October 13, 2022 Plaintiffs filed a renewed motion for sanctions against Defendants Susan Walker (Defendant Walker) and Snohomish County for spoliation of evidence. Dkt. 186. On October 31, 2022 Defendants filed their responses. Dkts. 209, 212. On November 4, 2022 Plaintiffs filed a reply. Dkt. 214.

The Court incorporates the facts of this case as set forth in its previous orders. *See e.g.*, Dkt. 77.

Plaintiffs allege Defendant Walker and Snohomish County destroyed and/or lost evidence relevant to this case during the state court dependency and termination proceedings involving minor Plaintiff A.H. (the dependency case), which took place in Snohomish County Superior Court between 2013 and 2016.

Defendant Walker and Snohomish County insist Plaintiffs' reliance on evidentiary issues that arose in the dependency case is misplaced, and that in this case they have met their preservation and production obligations by producing the entire archived file that existed at the time Plaintiffs filed a tort claim notice in 2020.

<u>EVIDENTIARY OBJECTIONS</u>

Defendants assert Plaintiffs have no admissible evidence showing they destroyed evidence. Dkt. 209 at 6. Plaintiffs rely on the findings and memorandum decision entered by Snohomish County Superior Court Judge Anita Farris (Judge Farris) explaining her reasons for recusing herself from the dependency case following the termination trial and dozens of post-trial hearings that followed the revelation of Volunteer Guardian ad Litem Program (VGAL Program) misconduct (the Farris memo). *See*, Dkts. 37-2 through 37-9. Defendants contend Plaintiffs' reliance on the Farris memo is improper because it constitutes hearsay and because it

1    is irrelevant as it does "not relate to the discovery that was produced in this case." *Id*. at 6-7. The

2    Court disagrees with Defendants on both counts, for the limited purposes of this motion.[2]

3        Case law indicates the Federal Rules of Evidence do not necessarily apply in the context

4    of a motion for sanctions. *See, Deerpoint Grp., Inc. v. Agrigenix, LLC*, Case No.1:18-cv-00536-

5    AWI-BAM, 2022 WL 16551632, at *10 (E.D. Cal. Oct. 31, 2022). Additionally, other pretrial,

6    non-dispositive motions do not require that evidence be submitted in a form that would be

7    admissible at trial. *See e.g.*, *AtPac, Inc. v. Aptitude Sols.*, *Inc.*, Case No. CIV. 2:10-294 WBS

8    JFM, 2011 WL 13242817, at *1 (E.D. Cal. Apr. 13, 2011). However, "'evidence relied upon

9    must, at a minimum, bear indicia of reliability.'" *Id.* at *1 (quoting *Sentis Grp., Inc., Coral Grp.,*

10   *Inc. v. Shell Oil Co.*, 559 F.3d 888, 901 (8th Cir. 2009)); *see also*, *Juul Labs, Inc. v. Chou*, Case

11   No. 2:21-cv-03056-DSF-PDx, 2022 WL 2161063, at *6 (C.D. Cal. May 6, 2022) (accepting

12   evidence that bears sufficient indicia of reliability in a sanctions motion).

13       Here, the Farris memo bears a sufficient indicia of reliability. Judge Farris presided over

14   the state court dependency action and following her verbal termination of parental rights she

15   conducted evidentiary hearings regarding alleged misconduct by Defendant Walker, the VGAL

16   program, and others. Dkt. 125. Moreover, the state court of appeals found Judge Farris's findings

17   reliable when determining Plaintiffs' due process rights were violated during the termination

18   hearing. *See, Matter of Dependency of A.E.T.H.*, 9 Wash. App. 2d 502, 520 (2019).

19       The Court concludes Judge Farris's findings are sufficiently reliable to be considered in

20   ruling on the motion for sanctions.

21

22

23

24   [2] Defendants also assert the Farris memo is not relevant to the issue of whether evidence was destroyed in this case. The Court finds this argument goes to the weight of the Farris memo, not the admissibility.

1

<u>DISCUSSION</u>

2      Plaintiffs allege Defendant Walker hid, altered, and deleted email evidence of

3 inappropriate contact between her supervisee—non-party VGAL Denice Brook (VGAL

4 Brook)[3]—and non-party foster mother J.B., including the unauthorized use of home computers

5 and personal cell phones. Dkt. 186 at 3. In addition, Plaintiffs allege that during the dependency

6 case Defendants hid or destroyed "an entire box of [VGAL] Brook's hard copy files on the

7 dependency action". Dkt. 186 at 3. Thus, the evidence at issue in this motion involves both

8 electronically stored information (ESI) and a box containing VGAL Brook's personal files (the

9 Brook Box).

10      Defendants insist they have met their preservation and production obligations in this case

11 by producing the entire archived file as it existed at the conclusion of the dependency case. *See*

12 *generally*, Dkts. 209, 212. Defendant Walker additionally argues, "The time and place to bring

13 such a motion was during the litigation of the Snohomish County dependency." Dkt. 209 at 2.

14 Snohomish County concurs with Defendant Walker, and further contends that discovery issues in

15 this case cannot be remedied by Fed. R. Civ. P. 37 because the rule "does not provide a

16 mechanism for the Court to grant substantive relief based on alleged misconduct that occurred in

17 a separate, state law proceeding." Dkt. 212 at 10.

18      Plaintiffs reply that Defendants had a duty to preserve the allegedly spoliated evidence at

19 the time is was destroyed—likely between 2013 and 2016—while the dependency case was

20 active in Snohomish County Superior Court, and also in anticipation of future civil litigation.

21 Dkt. 214.

22

23 _____

24      [3] VGAL Brook passed away unexpectedly in January 2015.

1    While the legal standards applicable to ESI and paper files are similar—each requiring

2    Plaintiff to make a threshold showing that the information at issue was irreversibly lost or

3    destroyed—the Court will analyze them separately, beginning with the paper documents

4    allegedly contained in the Brook Box.

5    **I.    <u>The Brook Box</u>**

6        a.   *<u>Legal Standard</u>*

7        Spoliation is the "destruction or significant alteration of evidence, or the failure to

8    preserve property for another's use as evidence, in pending or future litigation." *Kearney v.*

9    *Foley & Lardner, LLP,* 590 F.3d 638, 649 (9th Cir. 2009) (internal citation omitted). Pursuant to

10   its inherent powers to control the litigation before it, the district court may levy sanctions,

11   including the entry of judgment, for spoliation of evidence. *U.S. v. $40,955.00 in U.S. Currency,*

12   554 F.3d 752, 758 (9th Cir. 2009). When determining whether spoliated evidence warrants a

13   sanction, courts in the Ninth Circuit apply the three-part *Zubulake* test. *See*, *Apple, Inc. v.*

14   *Samsung Electronics, Co.*, *Ltd.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012) (citing *Zubulake v.*

15   *UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)). Under *Zubulake*, the party seeking

16   the sanction with respect to spoliated evidence must show: "(1) that the party having control over

17   the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records

18   were destroyed with a culpable state of mind; and (3) that the evidence was relevant to the

19   party's claim or defense such that a reasonable trier of fact could find that it would support that

20   claim or defense." *Zubulake*, 220 F.R.D. at 220.

21       Courts in this circuit have indicated the moving party must establish spoliation by a

22   preponderance of the evidence. *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, Case No.:

23   14-CV-1191 JLS (KSC), 2019 WL 6527951, at *28 (S.D. Cal. Dec. 4, 2019) ((following Ninth

24

ORDER RE PLAINTIFFS' MOTION FOR
SANCTIONS - 5

Circuit precedent permitting intent under Rule 37(e)(2) by preponderance of the evidence, not

clear and convincing evidence) (citing *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367,

372 (D. Or. May 23, 2017) ("[t]he applicable standard of proof for spoliation motions in the

Ninth Circuit is the preponderance of evidence"); *Weride Corp. v. Kun Huang*, Case No. 5:18-

cv-07233-EJD, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 16, 2020); *Compass Bank v. Morris*

*Cerullo World Evangelism*, 104 F.Supp.3d 1040, 1052–53 (S.D. Cal. May 8, 2015); *Colonies*

*Partners L.P. v. Cty. Of San Bernardino*, Case No. 5:18-cv-00420-JGB (SHK), 2020 WL

1496444, at *6 (C.D. Cal. Feb. 27, 2020). Further, a court "may make factual findings and assess

the credibility of witnesses. *Weride Corp.*, 2020 WL 1967209, at *33.

> b. *Factual Findings Regarding the Brook Box*

Judge Farris determined that a box containing VGAL Brook's "entire original hard GAL

file was last seen in [Defendant] Walker's office and is now missing." Dkt. 37-5 at 45. On

September 21, 2017 Judge Farris stated:

> The entire VGAL file disappeared while there was ongoing litigation in this case
> about the misconduct of VGAL Brook, while there was a Motion to Determine
> whether the Removal of [Defendant] Walker should be deemed for cause in part
> because of [Defendant] Walker's failure to control and report VGAL Brook's
> misconduct, and while there was a specific court order in effect to produce VGAL
> Brook's original hard file for inspection. No one knew anything about how the
> whole file disappeared from the VGAL Program offices. No one knew what all was
> in the file. No one had made a full copy of the file.

Dkt. 37-5 at 45-46; *see also*, *Matter of Dependency of A.E.T.H.*, 9 Wash. App. 2d at 520

("VGAL Brook's entire hard copy file for this dependency mysteriously 'disappeared' from the

VGAL Program's possession during the posttrial proceedings regarding the VGALs'

misconduct.").

///

///

1       c.   *Analysis*

2       Plaintiffs argue Judge Farris' finding that the Brook Box was lost or destroyed is

3 conclusive evidence that it was lost or destroyed. This Court disagrees.

4       First, Judge Farris learned about the existence of the Brook Box from Defendant Walker,

5 who testified during post-trial evidentiary hearings that after VGAL Brook's death in January

6 2015 a woman from VGAL Brooks' church "gathered up all the materials that she found in

7 [VGAL Brook's] house and gave them to me in a very large box," which Defendant Walker took

8 to her office. Dkt. 145-1 at 3-4, 10. The record, including the Judge Farris memo, does not

9 establish that the Brook Box contained documents related to the dependency case. At the time of

10 her death VGAL Brook was a *guardian ad litem* in several Snohomish County Superior Court

11 cases, so the Brook Box may have contained documents exclusively from other cases. In any

12 event, Plaintiffs have failed to show the Brook Box contained documents related to the

13 dependency case.

14       Second, it stands to reason that even if Defendant Walker, herself, did not do so before

15 taking family medical leave, someone in the VGAL office sorted the materials in the Brook Box

16 according to the cases they pertained to. Dkt. 37-5 at 45-47. This conclusion squares with what

17 Defendant Walker's then-attorney, "Mr. Nichols", reported to Judge Farris the day after Judge

18 Farris ordered Defendant Walker to go to her office and retrieve the Brook Box. He indicated

19 that Defendant Walker went to her office immediately following her testimony the preceding

20 day, and "was informed that pursuant to a previous order of the court to review all of [VGAL]

21 Brook's cases, that the box had been thoroughly examined, documents had been thoroughly

22 filed, there were no documents related to this case, and the box has been destroyed." Dkt. 145-2

23

24

at 2. This is further evidence that Judge Farris's conclusion that the contents of the Brook Box were destroyed is not supported by the record.

Third, when the Director of the Snohomish County VGAL Program, Jaime Peniche (Peniche), was called to the stand and testified that she did not have any personal knowledge about the Brook Box, she also testified that she did not know anything about what Defendant Walker's attorney reported earlier that day. *Id*. at 5-17. However, Peniche reported that after looking around and asking around the VGAL Program office she deduced that the contents of the Brook Box were not destroyed. Peniche testified to Judge Farris' questioning as follows:

> Q.    [Defendant] Walker said when she took parts out, she would copy them. Are you saying somebody pieced out the box? Or what are you saying? Have you looked? You're aware the Court has asked for the box?
>
> A.    I am.
>
> Q.    **Has the office looked for the box or its contents thoroughly, and what have you found?**
>
> A.    **So what we have found is that there isn't a box of [VGAL] Brooks' files.** There are files waiting to be archived with discovery, and there are contents of [VGAL] Brooks' notes and file contents in those individual cases in our area of files to be archived.
>
> Q.    **Well, you should be able to find out what happened to this, right? Since you're the head of the program?**
>
> A.    **Yes, I should.**
>
> Q.    Have you attempted to do that yet?
>
> A.    No. It's only been searching through the office. I haven't made any inquiries with anyone yet as to if - - who parsed out the information.
>
> Q.    [Defendant] Walker testified that the box was in her office before she went on leave.
>
> This Court's order to review all of [VGAL] Brooks' materials, which I presume you would know that you don't, then, destroy boxes of information was, [sic] in effect, long before you went on leave, right?
>
> A.    Correct.

1    Q.      So who made the decision to parse it out so no one could figure out what was in it?

2    A.      I don't know. I wasn't aware that it was being parsed out.

3    Q.      Well, you're aware of the Court's order, right?

4    A.      Yes.

5    Dkt. 145-2 at 15-16 (emphasis added). At that juncture Judge Farris ordered Peniche to return to

6    her the VGAL Program offices to "find out where the contents of the box are and who did what

7    with it" and return to the court with that information. *Id*. at 17. Questioning of Peniche later

8    resumed by the court, as follows:

9    Q.      **What's happening with the box?**

10   A.      So I went back. The box still is not located. **The contents of one of the cases what were actually [VGAL] Brooks' case information was with the discovery on that case in a box.** And the other two boxes of discovery on the other two cases, those two boxes did not contain any - - any originals of [VGAL] Brooks'
12   cases, and we haven't been able to locate those yet.

13          I contacted M. Beckford as well as [Defendant] Haugen and was able to get ahold of those two. **And neither of those two recalled. [Defendant] Haugen had no knowledge of the box. Ms. Beckford was aware that [VGAL] Brook's case information was with the other cases, what was with the archive as opposed to not altogether in a box. She doesn't know who transferred the information from the box to the other boxes.**

16

17          And then the staff who were in the office today were not aware of who did that as well, and they themselves did not do that.

18   Q.      Who does that leave left [sic]?

19   A.      So I have not yet asked Barbara O'Leary, Katherine Smith, or Margaret Davie who is on vacation and back on Monday.

20

21   *Id*. at 18-19 (emphasis added). Again, this testimony is inconsistent with Judge Farris's

22   conclusion that the contents of the Brook Box were destroyed. The record before this Court

23   does not explain how so many of VGAL Brook's files could be with their relevant case

24   archives if the contents of the Brook Box had been destroyed.

ORDER RE PLAINTIFFS' MOTION FOR
SANCTIONS - 9

Plaintiffs do not address these logical inconsistencies, but instead assert the Farris memo proves Snohomish County has not provided the Brook Box or "any handwritten notations that Brook or others made on [dependency case] documents." Dkt. 196 at 7. However, this assertion is belied by the inconsistencies between the record and the Farris memo, as well as the sworn declarations and supporting evidence offered by Defendants.

Joelle Kelly (Kelly) is the Division Manager of the Snohomish County Office of the Court Appointed Special Advocate Program (CASA Program), which replaced the VGAL Program in effect at the time the Brook Box allegedly "disappeared". *See generally*, Dkt. 139. According to Kelly, the CASA Program inherited the VGAL Program's "investigation and case file for the [dependency case]", which she avers has been kept in a "secure, locked file cabinet outside of the Assistant Juvenile Court Administrator's Office" ever since. Dkt. 139 at 2.

As attested to by Kelly, who facilitated the transfer of physical and electronic records in response to Plaintiffs' production requests, Snohomish County "provided thousands of documents via the secure electronic platform, OneDrive, as well as multiple Banker's Boxes filled with physical materials via courier", and that the "Bankers Boxes contained now-deceased VGAL Brook's entire hard copy file from the A.E.T.H. case, such as handwritten notes prepared by VGAL Brook, VGAL Brook's email correspondence with [Defendant] Walker and A.H.'s foster mother [J.B.], CD files containing VGAL Brook's personal emails, and other hard copy files that were identified and exchanged during the post-trial sanctions proceedings [in the dependency case]." *Id*. at 2-3. Kelly concludes that she has "no reason to believe" any of the documents "that existed at the time of the 2015 [dependency case] have since been destroyed or deleted." *Id*. at 2.

1  In addition, counsel for Snohomish County and Defendant Di Vittorio, Audrey Meghan

2  Airut Murphy (Attorney Murphy), concurs with Kelly that the contents of the Brook Box were

3  produced in this litigation and provides a representative sample of the contents, which includes

4  "correspondence between VGAL Brook, [Defendant] Walker, and the foster mother [J.B.], email

5  files sent to VGAL Brook's personal email address, and handwritten notes created by VGAL

6  Brook and [Defendant] Walker" were, indeed, among the documents Snohomish County

7  produced. Dkt. 140 at 3; Dkt. 140-3 at 1-25; *see also*, Dkt. 212 at 23-24.[4]

8  Plaintiffs dispute the reliability of Kelly's averments, arguing she lacks personal

9  knowledge because she was not employed by the VGAL Program during the "post-trial sanctions

10  proceedings" so she could not have personal knowledge regarding the contents of the Brook

11  Box. Dkt. 186 at 10. Plaintiffs also argue that, "Although Defendants may contend that some of

12  the emails and documents contained in the 'missing' box … must have been provided, there is no

13  way of reconstructing ALL the contents of that box, let alone any handwritten notations that

14  [VGAL] Brook or others made on these documents." Dkt. 186 at 7. Again, this argument

15  presumes the Brook Box was not reviewed and produced, or that only portions of it were

16  produced. It also fails to account for the fact Defendants produced many handwritten notes made

17  by VGAL Brook.

18  Notably, Plaintiffs' counsel admitted to Attorney Murphy that they did not review the full

19  scope of production from Snohomish County prior to alleging spoliation, claiming such a review

20

21

---

22  [4] Snohomish County states, "Brook's hard copy file was produced through requests for production 1, 2, and 15 on April 1, 2022. *See* Dkt. 140, ¶ 4; Dkt. 139, ¶ 7. Further, contained within these responses included pdf copies

23  of [VGAL] Brook's, [Defendant] Walker's, and the Foster Mothers' correspondence as well as scanned copies of handwritten notes prepared by VGAL Brook and [Defendant] Walker. Dkt. 140, ¶ 4; Dkt. 140-3. The County produced the entire A.E.T.H. investigation and case file in the VGAL Program's possession or control. Dkt. 140, ¶

24  4; Dkt. 139, ¶ 7." Dkt. 212 at 23-24.

was "irrelevant" due to Judge Farris's findings. Dkt. 140 at 4-5; Dkt. 140-6 at 2. Snohomish

County contends Plaintiff's disregard for the documents it actually produced in this case is

further supported by Plaintiff's allegations of discovery misconduct alleged in its Complaint,

which are "pulled directly from Judge Farris's post-trial, post-recusal, unpublished

memorandum." Dkt. 212 at 3.

In sum, the Court finds Plaintiffs have not proven by a preponderance of the evidence

that the contents of the Brook Box were lost or destroyed. The Court finds the declarations of

Kelly and Attorney Murphy, together with their supporting documentation, are more persuasive

than the reasoning in the Farris memo. Since Plaintiffs cannot meet the threshold showing that

the Brook Box was lost or destroyed, it is not necessary for the Court to assess the other factors

required for the imposition of sanctions.

## II.  **Defendant Walker's ESI**

### a. *Legal Standard*

"Federal Rule of Civil Procedure (Rule) 37 authorizes the district court, in its discretion,

to impose a wide range of sanctions when a party fails to comply with the rules of discovery or

with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589

(9th Cir. 1983). Rule 37(e) states, "if electronically stored information that should have been

preserved in the anticipation or conduct of litigation is lost because a party failed to take

reasonable steps to preserve it, and it cannot be restored or replaced through additional

discovery," the court may impose sanctions.

In evaluating whether spoliation of electronically stored information (ESI) has occurred,

similar to a court's inherent power to control litigation, courts should consider three threshold

criteria: whether "(1) the ESI 'should have been preserved in the anticipation or conduct of

1    litigation'; (2) the ESI 'is lost because a party failed to take reasonable steps to preserve it'; and,

2    (3) '[the ESI] cannot be restored or replaced through additional discovery.'" *Facebook, Inc. v.*

3    *Online NIC Inc.*, Case No.19-cv-07071-SI (SVK), 2022 WL 2289067, at *6 (N.D. Cal. Mar. 28,

4    2022); *see also*, *Porter v. City of San Francisco*, Case No.16-cv-03771-CW (DMR), 2018 WL

5    4215602, at *3 (N.D. Cal. Sept. 5, 2018) (quoting Rule 37(e)). Also, as discussed above, the

6    moving party must establish spoliation by a preponderance of the evidence.

7          b.   *Factual Findings Regarding Defendant Walker's ESI*

8          Judge Farris found that Defendant Walker permanently deleted an email regarding A.H.'s

9    dependency case from her Snohomish County email account, however that email was recovered

10   through other sources. Dkt. 37-5 at 18. Judge Farris stated that she made this determination after

11   discovering that VGAL Brook "was using a copy and paste scheme to be able to send VGAL

12   case information to her home email without leaving an electronic trail." Dkt. 37-5 at 18.[5] Judge

13   Farris determined that the email Defendant Walker deleted was from VGAL Brook, as it was

14   discovered in VGAL Brook's sent folder,[6] "but no corresponding email [was located in

15   Defendant] Walker's received folder." *Id.* at 22.

16   ///

17   ///

18

19

20      [5] Judge Farris explained: "VGAL Brook wanted to send the foster parent a social worker's email and was
     not sure if she was allowed to do that; VGAL Brook emailed supervisor Walker to see if she was allowed to send
21   this social worker's email to the foster parent, but supervisor Walker did not respond; VGAL Brook then copied the
     social worker's case email into a new email, then sent the new "copy and paste" email to her home email, then
     deleted the new "copy and paste" sent email from her VGAL email account." Dkt. 215-3 at 1-2 (footnotes omitted).

22
        [6] Brian Lewis (Lewis), Snohomish County Superior Court Public Disclosure Administrative Specialist,
23   declared that he discovered this information "in response to [Judge Farris's] order to produce all emails to and from
     [Defendant Walker] and [VGAL] Brook on the Snohomish County email system during the months of June and July
24   2014." Dkt. 215-2 at 1-2. Lewis further testified that permanent deletion of email could only be accomplished by
     completing a "multistep deletion process within 24 hours of [] receiving the email." Dkt. 37-4 at 56.

1        *c.   Analysis*

2        Although Plaintiffs insist Defendant Walker permanently deleted an unknown number of

3   emails (Dkt. 186 at 4), the record indicates that even Judge Farris found Defendant Walker only

4   deleted one email, dated July 2, 2014, and that it was recovered by a search of sent email located

5   in VGAL Brook's Snohomish County email account. Dkt. 37-4 at 56.

6        Plaintiffs point to a chart created by Judge Farris, which they interpret as listing

7   destroyed email deleted by Defendant Walker. Dkt. 186 at 4; Dkt. 37-4 at 38-41. In fact, this

8   chart lists email that was "extracted in [its] true form and found in VGAL [Brook's] email

9   electronic records", a description of what the email is regarding, and "how each extracted email

10  from the VGAL Program's email records compares to the evidence turned over in pretrial

11  discovery." Dkt. 37-4 at 37-38. In other words, this chart does NOT list permanently destroyed

12  email, or pertain to Defendant Walker's ESI.

13       Plaintiffs have not presented any other evidence to support their theory that Defendant

14  Walker's ESI was permanently lost or destroyed. Instead, Plaintiffs point out that Defendant

15  Walker does not state in her sworn declaration that she never communicated about the

16  dependency case via her home computer, implying that because Judge Farris found VGAL

17  Brook was using her home computer for case-related work, as discussed *infra*, Defendant Walker

18  was too. Dkt. 214 at 7. However this supposition does not rise to the level of a preponderance of

19  the evidence that Defendant Walker lost or destroyed ESI.

20       In sum, after considering the totality of the evidence before it, the Court does not find

21  Plaintiffs have made a "clear showing of destruction of evidence" on the part of Defendant

22  Walker, as they must for the Court to impose Rule 37(e) sanctions against her. *Kinnally v.*

23  *Rogers Corp.*, CV-06-2704-PHX-JAT, 2008 WL 4850116, at *5-6 (D. Ariz. Nov. 7, 2008).

24

1  Since Plaintiffs fail to make this threshold showing, it is not necessary for the Court to assess the

2  other factors required for the imposition of sanctions against Defendant Walker.

3  **III.**   **VGAL Brook's ESI**

4  *a.   Legal Standard*

5  The Court employs the legal standard set forth in section II. a., *supra*.

6  *b.   Factual Findings Regarding VGAL Brook's ESI*

7  Judge Farris determined, with the assistance of Brian Lewis (Lewis), a Snohomish

8  County Superior Court Public Disclosure Administrative Specialist, that VGAL Brook devised a

9  "copy and paste" scheme wherein she would use her work email to copy and paste information

10 she wanted to send to foster mother J.B. "without leaving an electronic trail." Dkt. 215-3 at 1-2.[7]

11 This copy and paste scheme would defeat the normal ability of the Snohomish County email

12 system to capture the fact an email had been forwarded by placing an arrow on the email, and

13 this scheme would thus not leave any record on the original email that it had been sent to VGAL

14 Brook's home email, or at least no record directly traceable from the original email. *Id.*

15 Although evidence of this scheme was only discovered because VGAL Brook made a

16 mistake one time and failed to "double delete" one of an unknown number of such emails[8] (Dkt.

17 37-4 at 57), Judge Farris found that when VGAL Brook executed the scheme "correctly" there

18 _____

19 [7] Judge Farris further explained: "VGAL Brook wanted to send the foster parent a social worker's email

20 and was not sure if she was allowed to do that; VGAL Brook emailed supervisor Walker to see if she was allowed to
send this social worker's email to the foster parent, but supervisor Walker did not respond; VGAL Brook then
copied the social worker's case email into a new email, then sent the new "copy and paste" email to her home email,

21 then deleted the new "copy and paste" sent email from her VGAL email account." Dkt. 215-3 at 1-2 (footnotes
omitted).

22 [8] "[T]he VGAL Program [admitted they] never checked VGAL Brooks' deleted emails … [and therefore]
failed to supply the deleted email still in the VGAL Program's records in discovery." Dkt. 215-3 at 3. Judge Farris

23 concluded that "VGAL attorneys failed to tell the staff to check the deleted email boxes as court ordered and failed
to disclose they were not producing that ordered deleted email information. The attorneys could not abdicate the
blame to a secretarial staff when they did not tell the secretarial staff the correct thing to do." Dkt. 37-6.

24

would be no record of the "final permanent deletion." Dkt. 37-4 at 57 (emphasis added)(footnotes omitted).

Judge Farris determined that VGAL Brook would then forward information to foster mother J.B. from her home email, and that the two were using personal email accounts and devices to communicate about the dependency case, which prevented those communications from being traced or documented, "unlike communications through the VGAL Program email system." *Id*. at 36. As a result, Judge Farris concluded, **"No record exists at all of what communications took place between the foster parent and VGAL [Brook] through their home emails…"**. *Id*. at 59 (emphasis added).

Judge Farris further determined that VGAL Brook's use of her personal email and devices was in direct contravention of the Snohomish County VGAL Program Best Practices Handbook (the Handbook). Judge Farris wrote:

> The handbook states, "All volunteers are **required** to utilize the county issued email account to conduct their volunteer business … **utilizing any other email system will result in dismissal from the program and the potential for incurring personal legal liability**."

*Id*. at 59 (emphasis added). Judge Farris also noted that the Handbook required all "case related emails (sent and received) … to be saved for future reference. Case folders should be created for all emails to be stored." *Id*. at 47 n. 155.

In addition, Plaintiff Aradon's attorney during the dependency case, Flint Stebbins (Attorney Stebbins), submitted an affidavit indicating his office was never able to access the home email accounts of either VGAL Brook or foster mother J.B.. Dkt. 145 at 11.

Finally, Judge Farris determined that VGAL Brook's supervisor, Defendant Walker, knew VGAL Brook was using her personal email and devices for case-related work. Judge Farris stated:

ORDER RE PLAINTIFFS' MOTION FOR SANCTIONS - 16

1    [Defendant] Walker … admitted herself that it was not hidden that VGAL Brook
     was using her home email … [but] provided no explanation why she did not put a
2    stop to it. Several VGAL supervisors testified the use of home email was strictly
     forbidden and **the Snohomish County VGAL Policy is clear that such use is**
3    **grounds for dismissal of a VGAL**.

4    Dkt. 37-4 at 58 (emphasis added).

5          c.   *Analysis*

6               i.  *Some of VGAL Brook's ESI was Lost and/or Destroyed*

7          Snohomish County does not deny VGAL Brook used her personal email and devices to

8    communicate regarding A.H.'s dependency case, but insists their duty to preserve ESI did not

9    arise until they "received notice of the lawsuit in 2020." Dkt. 212 at 16.

10         The Court finds Judge Farris's thorough inquiry into VGAL Brook's use of personal

11   email and devices, supported by the evidence uncovered by IT expert Lewis, proves by a

12   preponderance of the evidence that VGAL Brook's double deletion of emails permanently

13   deleted some of her Snohomish County email, and her use of personal email and devises also

14   resulted in lost and/or destroyed evidence.

15              ii.  *VGAL Brook's Lost and/or Destroyed ESI Cannot be Restored*

16         Next, Plaintiffs must show the lost and/or destroyed ESI cannot be restored.

17         This Court approved Plaintiffs' motion for limited discovery (Dkt. 165)[9] to subpoena

18   foster mother J.B.'s electronic devices, and later to depose her. Dkt. 172. She produced three

19   electronic devices on September 12, 2022, which were analyzed by Digital Forensics and E-

20

21

22         [9] Both Snohomish County and Defendant Walker opposed the motion, arguing any additional
23   documentation of communications between J.B. and the VGALs that may remain in J.B.'s possession would not be
     related to Defendants' discovery obligations in this case nor would it affect Plaintiffs' ability to prove that
24   Defendants proximately caused the harm Plaintiffs allege. *See generally*, Dkt. 169.

1    Discovery company, ArcherHall.[10] Dkt 187 at 3. Approximately 731 pages of documents were

2    produced. *Id.* Foster mother J.B. also sat for a deposition on September 28, 2022, after which she

3    produced additional hard copy emails on October 3, 2022. *Id.*

4          According to Plaintiffs' current attorney, Michael Withey (Attorney Withey), the

5    searches done by ArcherHall used the relevant search terms within dates and times when emails

6    were believed to have been sent between VGAL Program employees and foster mother J.B., and

7    resulted in no recovery of any email from J.B.'s devices. *Id.* at 4. Attorney Withey concludes this

8    is because, as J.B. testified during her deposition, she, too, utilized the "double delete" method

9    "by first deleting the email on her home computer and also going into the 'Trash' file where the

10   deleted emails were deposited and again deleting those emails." *Id.* at 5. J.B. also testified that

11   she discarded the computer she used during A.H.'s dependency case:

12         Q.     All right. [J.B.] could you tell me what devices, electronic devices, you used
           during the time period of this subpoena, which is between February 1st, 2013, and
13         December 15th, 2020, that you used that would have any of the names or dates that
           are identified in this subpoena?

14
           A.     So I had the laptop and the passport and the phone that I gave you, and then
15         prior to the laptop, **I had a computer several years ago that I had, but it broke,
           and so I don't have that computer anymore…**
16
           Q.     Was it in use during the time period 2013 to -- and beyond?
17
           A.     Yes.
18
           Q.     When you sent e-mails to and from any of the 24 individuals listed in
19         Exhibit 1 under search terms, did you use that computer?

20         A.     Yes.

21         Q.     **And you would have used that computer rather than the laptop you
           produced to us** for the data extraction; correct?
22
           A.     **Right.**
23         _____

24         [10] ArcherHall, https://archerhall.com/digital-forensics (last visited Jan, 11, 2023).

Dkt. 187-3 at 1 (emphasis added).

Accordingly, the Court concludes that VGAL Brook's lost and/or destroyed ESI—the quantum of which is unknown—cannot be fully reconstructed[11] or obtained through another source.

### iii. Defendants Failed to Take Reasonable Steps to Preserve VGAL Brook's ESI

Next, Plaintiffs must show Defendants failed to take reasonable steps to perverse VGAL Brook's lost and/or destroyed ESI.

VGAL Brook, herself, not only failed to take reasonable steps to preserve her ESI, the Farris memo concludes she affirmatively sought to destroy it. As Lewis testified, the "double delete" conspiracy could only have been accomplished by completing a "multistep deletion process within 24 hours of [them] receiving the email." Dkt. 37-4 at p. 56. There is no dispute VGAL Brook's use of personal email and devices directly violated the Handbook, and that Defendant Walker—an employee of the VGAL Program at the time—knew about it. The VGAL Program, generally, admitted that VGAL Brook's conduct was "appalling" and that she should have been terminated. Dkt. 37-3 at 3.

In their briefing (Dkt. 212) Snohomish County does not specifically address the loss and/or destruction of VGAL Brook's ESI, however the Court interprets their arguments relating to preservation of Defendant Walker's ESI as also applicable to VGAL Brook's ESI.

---

[11] In a January 2016 declaration J.B. provided a chart of documents about the dependency case that she provided to the VGAL Program during post-trial hearings, but indicated that she did not recall exactly who provided her with those documents because she often printed attachments sent in emails, "but deleted the initial e-mail, so [J.B. could not] be certain about when or how [she] got each document." Dkt. 187-5 at 2. Additionally, the Kelly declaration discussed, *supra*, indicates some of VGAL Brook's email correspondence with foster mother J.B. was part of the Brook Box production to Plaintiffs in the case at bar. Dkt. 139 at 3.

1    Snohomish County argues, without supporting authority, that "Rule 37 does not provide a

2    mechanism for the Court to grant substantive relief based on alleged misconduct that occurred in

3    a separate, state law proceeding." Dkt. 212 at 10-11. Specifically, Snohomish County contends,

4       Whether or not spoliation occurred in the underlying dependency matter is **not
        related** to Defendants' discovery obligations in this case, and therefore Plaintiffs
5       cannot support a plausible argument that Defendants' alleged spoliation during
        A.H.'s dependency proceedings constituted **prejudicial discovery misconduct in
6       this case.**

7    *Id*. at 13 (emphasis added).

8    Snohomish County points to the case of *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg.*

9    *Corp*., 982 F.2d 363, 371 (9th Cir. 1992), in which the insurer of a boat destroyed in a fire

10   brought a subrogation claim against the manufacturer of the electric space heater the insurer

11   alleged was responsible for the fire. The manufacturer of the electric space heater counterclaimed

12   for the "tort of spoliation of evidence"[12] because the boat was discarded before the electric space

13   heater manufacturer could inspect it. The Court found that the tort of spoliation only applies

14   when a defendant or third party "with a duty to the plaintiff—has spoliated evidence", and that

15   the insurance company did not owe the electric space heater manufacturer any duty. *Id*. at 371.

16   Snohomish County argues that, as in *Unigard*, in this case "Plaintiffs seek to use

17   evidence of spoliation just as they would had they brought a spoliation cause of action: they seek

18   to use it as substantive evidence of their claims." Dkt. 212 at 14. Snohomish County further

19   states, "As was the case for the *Unigard* spoliation cause of action, the substantive claims at

20   issue here are due process and negligence claims…". *Id*.

21

22   _____

23   [12] Notably, the *Unigard* court also found that "The factual context of this case makes it unnecessary for us
     to predict whether or not the State of Washington would recognize the tort of spoliation of evidence in an
24   appropriate case." 982 F.2d at 371.

1    The Court will not take up the question of appropriate sanctions in this order, and

2    therefore need not address whether VGAL Brook's ESI bears any relationship to Plaintiffs'

3    substantive causes of action. However, it must be noted that Snohomish County is mistaken that

4    *Unigard* involved due process and negligence claims, as does the case at bar does, or that

5    *Unigard* has any bearing on this case except perhaps insofar as it appears to support Plaintiffs'

6    position that unlike the insurance company in *Unigard*, here Snohomish County owed Plaintiffs

7    a duty to preserve the ESI that VGAL Brook spoliated. *See,* 982 F.2d at 371.

8    Next, Snohomish County contends their duty to preserve could not have arisen before the

9    events giving rise to Plaintiffs' complaint "took place and before parties to this case could have

10   taken reasonable steps to preserve the information." Dkt. 212 at 14. As discussed, *infra*, the

11   Court finds that VGAL Brook's spoliation of ESI happened concurrently with the events giving

12   rise to Plaintiffs' complaint, and therefore the VGAL Program's duty to preserve also arose

13   concurrently.

14   Similarly unpersuasive is Snohomish County's position that it could not have anticipated

15   this litigation back in 2013 through 2015, when VGAL Brook was conducting her "double

16   delete" and use of personal email and devices operation. *Id*. at 14-15. This argument is not

17   persuasive as the above-cited document retention policies in the Handbook unequivocally

18   establish all dependency case materials must be preserved. Dkt. 37-4 at 58.

19   Snohomish County also argues that Plaintiff's only filed this case because spoliation

20   occurred, and that is not something Rule 37(e) can remedy. *See*, Dkt. 212 at 16. However, a

21   review of the Complaint reveals this statement to be incorrect. *See*, Dkt. 1-1.

22   Finally, Snohomish County unconvincingly argues that the document retention policy in

23   the Handbook requiring VGAL files to be retained for eight years after a case is closed, or three

24

years after the child turns 18, only applies after a dependency case has concluded, and therefore

the retention policy was not violated in this case because Plaintiffs allege VGAL Brook's ESI

was lost and/or destroyed before the dependency case was concluded. Dkt. 212 at 16-17. This

argument is unavailing given the Handbook retention policies required VGAL Brook to preserve

her ESI, and the Snohomish County Superior Court Records Retention Schedule provides clear

descriptions of the sorts of evidence likely to be found in "Dependency CASA (VGAL) Program

Files" and "Dependency CASA Volunteer Case Files". *See,* Dkt. 145-4 at 43.

Thus, while the Court finds that the declaration of Kelly convincingly establishes the

meticulous steps the VGAL Program took to retain records related to the dependency case

investigation file in its possession and control at the time the dependency case and 2016 post-

trial proceedings concluded, the Court also finds that those records could not have contained all

the ESI lost and/or destroyed by VGAL Brook before her death in January 2015. Dkt. 212 at 4.

In sum, the Court finds VGAL Brook spoliated ESI she and Snohomish County had a

duty to preserve.

### iv.  VGAL Brook's Lost and/or Destroyed ESI was Relevant

Finally, Plaintiffs must show VGAL Brook's lost and/or destroyed ESI was relevant to

this case and the claims brought by Plaintiffs. Here, the Plaintiffs have raised Section 1983

claims alleging due process rights violations, as well as state-court negligence claims.

Judge Farris found VGAL Brook engaged in "egregious disclosures" of A.H.'s biological

parents' confidentiality until her death in January 2015. *See e.g*., Dkt. 37-4 at 18, 31, 33. Judge

Farris also found that VGAL Brook's attempt to cover-up her inappropriate communications

resulted in an unfair dependency process, and Defendant Walker's lack of candor regarding the

same led to an appeal of the termination of Plaintiffs' parental rights over A.H., and a reversal by

1    the Washington Court of Appeals. Dkt. 125-3 at 61 (colloquy with VGAL counsel in which

2    Judge Farris finds Defendant Walker's lack of disclosure of VGAL Brook's improprieties would

3    likely result in an appeal, all against the best of interest of A.H.'s need for permanency).

4            For these reasons the Court finds VGAL Brook's lost and/or destroyed ESI is relevant to

5    Plaintiffs'claims.

6                                    <u>CONCLUSION</u>

7            For the foregoing reasons, Plaintiffs' motion (Dkt. 186) is DENIED in part, GRANTED

8    in part, and DEFERRED in part as follows:

9        (1) Plaintiffs' motion for sanctions regarding the Brook Box and Defendant Walker's ESI

10           is DENIED;

11       (2) The Court has reviewed the totality of the evidence and finds by a preponderance of

12           the evidence that spoliation has occurred by Snohomish County with regard to VGAL

13           Brook's lost and/or destroyed ESI. Therefore the motion for sanctions against

14           Snohomish County with regard to VGAL Brook's ESI is GRANTED, in part, with a

15           ruling on what sanctions should be imposed DEFERRED. The Court will set a

16           hearing to determine appropriate sanctions during the week of January 30, 2023.

17   Finally, the Clerk is directed to re-note the Motion (Dkt. 186) for February 3, 2023.

18   Dated this 11th day of January, 2023.

19

20                                    _David W. Christel_

21                                    David W. Christel
                                      United States Magistrate Judge

22

23

24