UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NYLYSHA STARVION BELAFON ARADON, et al.,

Plaintiff,

v.

SNOHOMISH COUNTY, et al.,

Defendant.

CASE NO. 2:20-CV-1665-RSM-DWC

REPORT AND RECOMMENDATION

Noting Date: **March 3, 2023**

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently before the Court are Defendant Kristen Haugen's Second Renewed Motion for Summary Judgment, Defendant Susan Walker's Second Renewed Motion for Summary Judgment, and Defendants Snohomish County and Sara Di Vittorio's Renewed Motion for Summary Judgment (motions for summary judgment). Dkts. 182, 188, 192.

After consideration of the relevant record, the undersigned recommends:

1. Defendant Haugen's motion for summary judgment (Dkt. 182) be granted;

2. Defendant Walker's motion for summary judgment (Dkt. 188) be granted; and,

REPORT AND RECOMMENDATION - 1

3.  Defendants Snohomish County and Di Vittorio's motion for summary judgment (Dkt.
    192) be granted-in-part and denied-in-part. The Court recommends their motion for
    summary judgment be (a) denied as to Plaintiff A.H.'s federal claims and state law claim
    of negligent administration of the parental dependency and termination alleged against
    Snohomish County; and (b) granted as to all remaining portions, which includes
    dismissing (1) all claims alleged against Defendant Di Vittorio, (2) all claims alleged by
    Plaintiffs Nylysha Starvion Belafon Aradon, Carey Allen Hayes, and A.L.; and (3) all
    remaining state law claims alleged by A.H..

    In summary, the Court recommends all claims and parties be dismissed from this action
except A.H.'s claims against Snohomish County for federal constitutional violations – the
Fourth, Fifth, and Sixth Causes of Action – and the state law claim of negligent administration –
the First Cause of Action.

# I. BACKGROUND

## A.  Factual Background

The Court incorporates the facts set forth in its previous orders for a general background
of this case. *See e.g.*, Dkt. 77.

## B.  Procedural Background

In their Complaint Plaintiffs allege Defendants committed tortious acts during the state
court dependency and termination proceedings involving minor Plaintiff A.H. which took place
in Snohomish County Superior Court between 2013 and 2016 (the dependency case).
Specifically, Plaintiffs allege state causes of action for negligent administration of the
Snohomish County Parental Dependency and Termination Program, negligent investigation,
negligent infliction of emotional distress (NIED), and outrage. Dkt. 1-1. Plaintiffs also allege

1  federal claims under the Fourth and Fourteenth Amendment. *Id.* Plaintiffs have withdrawn their

2  NIED and outrage causes of action. Dkt. 217 at 72. All Defendants filed motions for summary

3  judgment. Dkts. 182, 188, 192. Plaintiffs filed a response in opposition (Dkt. 217) and each

4  Defendant filed a reply (Dkts. 220, 221, 222).

5  ## II. REQUESTS TO STRIKE

6      In their Replies, all Defendants request the Court decline to consider, or strike, Judge

7  Anita Farris's Memorandum (Dkts. 37-2 – 37-5), the Honorable Frank Cuthbertson's Declaration

8  (Dkt. 126), and Attorney Adam Ballout's Declarations (Dkts. 37-1, 127).[1] Dkts. 220, 221, 222.

9  In addition, Defendant Walker states Colleen Stark-Bell's Declaration (Dkt. 218-4) is

10  inadmissible (Dkt. 221) and Defendants Snohomish County and Di Vittorio request the Court

11  strike trial transcript exhibits. (Dkt. 222).[2]

12      Only admissible evidence may be considered in ruling on a motion for summary

13  judgment. *Orr v. Bank of America, NT & SA,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R.

14  Civ. P. 56(e). At the summary judgment stage, the Court focuses on the admissibility of the

15  evidence's content, not on the admissibility of its form. *Fraser v. Goodale,* 342 F.3d 1032, 1036

16  (9th Cir. 2003); *see also Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To

17  survive summary judgment, a party does not necessarily have to produce evidence in a form that

18  would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of

19  Civil Procedure 56."). A party may object to cited documentation asserting the material cited

20  would not be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Admissible declarations or

21

22      [1] The record also reflects a Ballout Declaration at Dkt. 101, which is not cited by the parties in their response. Thus, the Court only addresses the Ballout Declarations at Dkt. 37-1 and Dkt. 127 (Ballout Declarations).

23

24      [2] The Court has previously denied motions for summary judgment. *See* Dkts. 78, 172. The Court declines to consider any requests to strike contained in the briefing supporting the denied motions for summary judgment.

affidavits must be based on personal knowledge, must set forth facts that would be admissible in

evidence, and must show the declarant or affiant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(4). The decision to exclude evidence lies within the Court's discretion. *Orr*,

285 F.3d at 773.

**A. Farris Memo**

On June 23, 2017 Judge Farris in the dependency case filed a 317-page memorandum,

broken-down into sections, detailing her reasons for recusing herself in that case. Dkts. 37-2 –

37-5 (Farris Memo). Judge Farris wrote the Farris Memo prior to her recusal and filed it "to

show what th[e] court's findings would have been but for the recusal[.]" Dkt. 37-3 at 1. Each

section states, "This Memorandum Decision is not supported by a final order and a

Memorandum Decision is not final findings or a final order." *See e.g.*, Dkt. 37-2 at 1. All

Defendants assert the Farris Memo is inadmissible. Dkts. 220, 221, 222.

"[J]udicial findings of fact[] are hearsay, inadmissible to prove the truth of the findings

unless a specific hearsay exception exists." *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir.

2007). The Farris Memo sets forth Judge Farris's findings of fact. Regardless of whether the

Farris Memo was entered as a final order, under *Sine*, the Farris Memo is inadmissible to prove

the truth of Judge Farris's findings. Plaintiffs do not cite to any hearsay exception that would

allow this Court to consider the Farris Memo for the truth of the findings. Rather, Plaintiffs have

"explicitly acknowledge[d] [Judge Farris's] findings are neither 'conclusive' nor admissible."

Dkt. 135 at 1. As judicial findings of fact are hearsay, the Court finds the Farris Memo cannot be

used to prove the truth of the findings, and is therefore excluded for this purpose.[3]

---

[3] The Court did consider Judge Farris's findings when ruling on Plaintiffs' motion for sanctions, after
determining that they were sufficiently reliable for that purpose as the Federal Rules of Evidence do not necessarily

1    The Court also finds that any other judicial findings, including the Washington State

2    Court of Appeals decision[4] and other orders entered by Judge Farris, are inadmissible hearsay

3    that cannot be used to prove the truth of those findings. Moreover, as judicial findings are

4    hearsay, any statements in a declaration that rely on Judge Farris's findings, or any other judicial

5    findings, are excluded as those statements are not based on personal knowledge and rely on

6    hearsay.

7    **B. Cuthbertson Declaration**

8    All Defendants request the Honorable Frank Cuthbertson's Declaration (Cuthbertson

9    Declaration) be excluded. Dkts. 220, 221, 222. The Court has excluded the Cuthbertson

10    Declaration as a sanction for failing to comply with the discovery rules. Dkt. 252. As the

11    Cuthbertson Declaration has been excluded, the Court need not determine if it should be stricken

12    for purposes of the motions for summary judgment and will not consider it.

13    **C. Ballout Declarations**

14    All Defendants request the Court exclude the Ballout Declarations. Attorney Adam

15    Ballout represented Plaintiffs in the dependency case. Dkt. 37-1 at 2.[5] Mr. Ballout has testified

16    about the conduct of Defendants during those proceedings. *See* Dkts. 37-1, 127. As stated above,

17    the Court finds all evidence summarizing, citing, or dependent upon the Farris Memo is hearsay

18    and not based on Mr. Ballout's personal knowledge. Mr. Ballout has made statements that cite to

19    and rely on the Farris Memo. *See* Dkt. 37-1. While he states, generally, his declarations are based

20

21    _____

22    apply in the context of a motion for sanctions and non-dispositive motions do not require evidence be submitted in a
form that would be admissible at trial. *See,* Dkt. 232 at 3.

23    [4] *See, Matter of Dependency of A.E.T.H.*, 9 Wash. App. 2d 502, 520 (2019), cert denied, *In re A.E.T.H.*,
195 Wash. 2d 1013 (2020). The state court case captions refer to A.H. as A.E.T.H..

24    [5] Ballout does not identify which Plaintiffs he represented. *See,* Dkt. 37-1.

on his personal knowledge, Mr. Ballout has not sufficiently explained his independent, personal

knowledge of his statements that rely on the Farris Memo. Accordingly, in considering the

motions for summary judgment, the Court will not consider statements in the Ballout

Declarations that cite to or rely on the Farris Memo.

To the extent statements in the Ballout Declarations do not meet the requirements of Rule

56, the statements will not be considered by the Court. For example, when Mr. Ballout's

statements are conclusory or fail to sufficiently explain his personal knowledge, the statements

will not be considered. However, the Court recognizes Mr. Ballout was present during the

Snohomish County hearings and trial. As such, he could have personal knowledge regarding the

dependency proceedings and Defendants' conduct related to those proceedings. Therefore, the

Court will consider the portions of the Ballout Declarations that are based on Mr. Ballout's

personal knowledge, including statements that are admissible pursuant to hearsay exceptions.

**D.  Stark-Bell Declaration**

In her Reply, Defendant Walker requests the Court exclude Colleen Stark-Bell's

Declaration (Stark-Bell Declaration). Dkt. 221 at 5. While not clearly cited by Defendant

Walker, the Court concludes Defendant Walker is asking the Court to exclude the Stark-Bell

Declaration found at Docket Entry 218-4.

Ms. Stark-Bell is employed by the Washington State Department of Children, Youth and

Families as a social worker. Dkt. 218-4. Ms. Stark-Bell presented a declaration to the King

County Superior Court requesting Plaintiff A.H. be returned home to Plaintiffs Aradon and

Hayes.[6] *See id*. Defendant Walker contends the Stark-Bell Declaration is inadmissible because it

---

[6] The Court notes the Stark-Bell Declaration is redacted; however, the parties do not dispute the declaration is related to the reunification of Plaintiff A.H. with Plaintiffs Aradon and Hayes.

is based on the Farris Memo. Dkt. 221 at 5 (citing Dkt. 100 at 4). There is no indication Ms.

Stark-Bell relied on the findings of fact in the Farris Memo. *See* Dkt. 218-4; *see also*, Dkt. 100 at

4. Therefore, the Court declines to exclude the Stark-Bell Declaration for this reason; however,

as stated above, declarations relying on judicial findings of fact will not be considered.

Defendant Walker also asserts Ms. Stark-Bell is not qualified to opine on whether

Plaintiffs' due process rights were violated. Dkt. 221 at 5. The Court agrees. Plaintiffs have not

shown Ms. Stark-Bell is qualified to opine regarding whether Plaintiffs' due process rights were

violated. While Plaintiffs stated they planned on disclosing a "DSHS[7] expert witness," there is

no indication Plaintiffs ever made such an expert disclosure. Such a disclosure was required

under Rule 26. *See*, *Mettias v. United States*, 2015 WL 998706, at *4 (D. Haw. Mar. 6, 2015)

(internal quotations omitted) ("Rule 26(a)(2)(A)'s disclosure requirement applies to all witnesses

providing expert testimony, including percipient witnesses such as treating physicians and others

with direct knowledge of the facts of the case."). Further, even if Ms. Stark-Bell was identified as

an expert, in general, "an expert witness cannot testify to a matter of law amounting to a legal

conclusion." *U.S. v. Tamman*, 782 F.3d 543, 552-53 (9th Cir. 2015). Therefore, the Court will

exclude portions of the Stark-Bell Declaration that state an opinion regarding whether Plaintiffs'

due process rights were violated. The Court will consider the remaining portions of the Stark-

Bell Declaration that comply with the requirements of Rule 56.

**E.  Trial Transcript Exhibits**

Defendants Snohomish County and Di Vittorio request the Court strike the trial

transcripts attached to Attorney Michael Withey's declaration. Dkt. 222 at 10-11. Specifically,

Defendants Snohomish County and Di Vittorio assert the exhibits are inadmissible and

---

[7] "DSHS" stands for Department of Social and Health Services.

1   unauthenticated. *Id*. Defendants Snohomish County and Di Vittorio rely on *Orr*. In *Orr*, when

2   determining if trial transcripts from a separate trial were admissible at summary judgment, the

3   Ninth Circuit found they did "not identify the names of the witness, the trial, and the judge and

4   [were] not certified copies of the reporter's transcript." 285 F.3d at 776. The court also found the

5   declarant could not attest that the transcripts were true and correct copies. *Id*. As a result, the

6   Ninth Circuit determined the trial transcripts were not properly authenticated and inadmissible at

7   summary judgment. *Id*.

8          "[A] 2010 amendment changed Rule 56 and superseded the *Orr* holding on which [the

9   party] relies. The rule now requires courts to consider 'material cited to ... dispute a fact' that can

10  'be presented in a form that would be admissible in evidence.'" *Cottrell v. I.C. Sys., Inc.*, 2022

11  WL 17582374, at *1 (W.D. Wash. Dec. 12, 2022) (quoting Fed. R. Civ. P. 56(c)(2)). Stated

12  another way, "the 2010 amendments to Federal Rule of Civil Procedure 56 eliminate[d]" the

13  requirement that evidence must be authenticated and admissible in its present form for it to be

14  considered at summary judgment "and mandate only that the *substance* of the proffered evidence

15  would be admissible at trial." *Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 922–23 (D. Nev. Jan. 24,

16  2019) (internal quotations omitted, alternations and emphasis in original); *see also Romero v.*

17  *Nevada Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (internal quotations omitted)

18  ("Although Rule 56 was amended in 2010 to eliminate the unequivocal requirement that

19  evidence submitted at summary judgment must be authenticated, the amended Rule still requires

20  that such evidence would be admissible in evidence at trial.").

21         Defendants have not shown the trial transcripts cannot be admitted at trial and the Court

22  finds these trial transcripts may be admissible. For example, testimony by Defendant Walker is

23  potentially admissible as a statement made by a party opponent. *See United States v. Arias*, 575

24

F.2d 253, 254 (9th Cir. 1978) (discussing admissibility of a trial transcript despite being hearsay); *Pizarro v. Nat'l Steel & Shipbuilding Co.*, 2021 WL 1197467, at *5 (N.D. Cal. Mar. 30, 2021) (considering past trial transcripts on summary judgment); *see e.g.*, *Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001) ("Sworn deposition testimony may be used by or against a party on summary judgment regardless of whether the testimony was taken in a separate proceeding."). Therefore, the Court declines to strike the trial transcript exhibits. However, "[t]he Court cannot rely on irrelevant facts" in deciding summary judgment. *Gaub v. Prof'l Hosp. Supply, Inc.*, 845 F. Supp. 2d 1118, 1128 (D. Idaho 2012). Although the Court will not strike the trial transcript exhibits, the Court will consider only evidence that is material to the allegations in the Complaint in ruling on the Motions for Summary Judgment.

## F.  Conclusion

For the above stated reasons, the Court excludes the Farris Memo and the portions of any declaration that rely on the Farris Memo to prove the truth of the findings. As the Cuthbertson Declaration has been excluded, the Court will not consider it. Additionally, the Court excludes any portions of the Stark-Bell Declaration that state an opinion regarding whether Plaintiffs' due process rights were violated.

The Court will consider portions of the Ballout Declarations and the Stark-Bell Declaration that are based on personal knowledge and/or admissible under a hearsay exception. Moreover, the Court will not strike the trial transcript exhibits. In ruling on the Motions for Summary Judgement, the Court, however, will only consider evidence that is admissible under Rule 56 and material to the allegations in the Complaint.

The Court notes it previously warned the parties it would consider only the evidence cited to in any motions for summary judgment. Dkt. 172 at 5 (citing Fed. R. Civ. P. 56(c)(3) ("[t]he court need consider only the cited materials ...")). The Court instructed the parties to specifically

1  cite to the evidence on which they rely. *Id*. Thus, the Court will only consider evidence

2  specifically cited by the parties in the motions for summary judgment, response, and replies.

3  ### III. SUMMARY JUDGMENT STANDARD

4      "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery

5  and upon motion, against a party who fails to make a showing sufficient to establish the

6  existence of an element essential to that party's case, and on which that party will bear the

7  burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P.

8  56(c).

9      Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

10  file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

11  movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

12      There is no genuine issue of fact for trial where the record, taken as a whole, could not

13  lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith*

14  *Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant

15  probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e).

16  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting

17  the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.

18  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec.*

19  *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

20  ### IV. DISCUSSION

21      As Plaintiffs have withdrawn their NIED and outrage causes of action (Dkt. 217 at 72),

22  their remaining state causes of action are for negligent administration of the Snohomish County

23  Parental Dependency and Termination Program (the VGAL Program) and  negligent

24

1  investigation. Plaintiffs also assert federal claims under the Fourth and Fourteenth Amendments.

2  Dkt. 2-1.

3      Before turning to the merits of these claims, the Court must first address the Plaintiffs'

4  legal impediments to relief.

## A. Immunity

### 1. Defendant Snohomish County

7      The County insists it is immune under sovereign and judicial immunity. Dkt. 192 at 14-

8  15. It argues the Eleventh Amendment precludes lawsuits against the superior court and its

9  employees, including the VGAL Program which the County refers to as "a court-operated

10 program". *Id*. at 15. The County states that since Plaintiffs claim the Snohomish County Superior

11 Court and the VGAL Program caused them damages by "prolonging [] A.H.'s dependency and

12 the removal of A.H. from her parents, and since "entering court orders is a judicial act subject to

13 absolute judicial immunity, their claims fail as a matter of law." *Id*. at 15. In addition, the County

14 argues "judicial immunity extends to claims against the County that are based on allegations that

15 the court failed to adequately train or supervise court officers, including VGALs." Dkt. 192 at 15

16 (citing *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995)). This is because, according to

17 the County, VGALs are statutorily defined as "officers of the court" for the purpose of

18 immunity, which immunizes individual VGALs from suit. Dkt. 192 at 15-16 (citing RCW

19 13.34.105(2)).

20     The Eleventh Amendment bars suits which seek either damages or injunctive relief

21 against a state, an "arm of the state," its instrumentalities, or its agencies. *Durning v. Citibank,*

22 *N.A*., 950 F.2d 1419, 1422–23 (9th Cir.1991). However, a state waives its Eleventh Amendment

23 immunity by invoking federal jurisdiction. *Clark v. Barnard*, 108 U.S. 436, 447–448 (1883); *see*

24 *also*, *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd*., 527 U.S. 666,

675 (1999)(sovereign immunity waived if the state makes a "clear declaration that it intends to submit itself to [federal] jurisdiction.). Here, the County—an "arm of the state"—removed Plaintiffs' case from state court to federal court. Dkt. 1. In so doing, the County clearly invoked federal jurisdiction, thereby waiving Eleventh Amendment immunity.

With regard to judicial immunity, "Courts have extended absolute judicial immunity from damage actions under 42 U.S.C. § 1983 not only to judges but also to officers whose functions bear a close association to the judicial process." *Demoran v. Witt*, 781 F.2d 155, 156 (9th Cir. 1986). "Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc); *see also*, *Miller v. Davis*, 521 F.3d 1142, 1145 (9th Cir. 2008); *Partington v. Gedan*, 961 F.2d 852, 860 n.8 (9th Cir. 1992); *Houghton v. Osborne*, 834 F.2d 745, 750 (9th Cir. 1987).

"To determine if a given action is judicial …, courts [should] focus on whether (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity." *Ashelman*, 793 F.2d at 1075–76; *see also*, *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *Meek v. Cty. of Riverside*, 183 F.3d 962, 965-66 (9th Cir. 1999); *Partington v. Gedan*, 961 F.2d 852, 866 (9th Cir. 1992).

"Administrative decisions, even though they may be essential to the very functioning of the courts," are not within the scope of judicial immunity. *Forrester v. White*, 484 U.S. 219, 228–30 (1988) (holding that a judge is not absolutely immune from suit in her or his capacity as an employer and that the judge may be liable for unconstitutional conduct regarding the

1    discharge, demotion, and treatment of employees); *see also*, *Antoine v. Byers & Anderson, Inc.*,

2    508 U.S. 429, 435 (1993); *Meek*, 183 F.2d at 966; *L.A. Police Protective League v. Gates*, 907

3    F.2d 879, 889 (9th Cir. 1990).

4         Here, Plaintiffs assert the County failed to adequately train or supervise VGAL Program

5    employees and volunteers. Such training is not a normal judicial function, would not occur in a

6    judge's chambers, is not centered around a case pending before a judge, and does not arise

7    directly and immediately out of a confrontation with a judge. *See*, *Ashelman*, 793 F.2d at 1075–

8    76. Training staff is an administrative function, not within the scope of judicial immunity.

9    Accordingly, the County is not entitled to judicial immunity.

10        2.  <u>Defendant Di Vittorio</u>

11        Defendant Di Vittorio insists she is immune from liability under the doctrines of quasi-

12    judicial, prosecutorial, and qualified immunity. Dkt. 192 at 16. Di Vittorio argues Plaintiffs'

13    allegations against her "arose out of her work as a deputy prosecuting attorney for the

14    Snohomish County Prosecutor's Office, providing advice and representation to [the] Snohomish

15    County Superior Court." *Id*. (citing Dkt. 51). She further argues that although her role was "not a

16    traditionally judicial function, functionally, she took on a quasi-judicial role by advocating for

17    the court in the post-trial proceedings" thereby entitling her to quasi-judicial immunity. Dkt. 192

18    at 18. Finally, she claims qualified immunity would apply "where a prosecutor engages in out-of-

19    court functions, such as "administrative or consultation work". *Id*.

20        Plaintiffs argues immunity does not apply to Defendant Di Vittorio (or Defendant

21    Haugen or Walker),[8] first because the "functionality test" cannot be met as Defendants

22    _____

23        [8] Plaintiffs present their immunity objections in summary fashion, addressing Defendants Di Vittorio,
      Haugen, and Walker interchangeably. Dkt. 217 at 22-23.

24

"committed numerous acts well outside the functional boundaries and statutory framework entitling them to any immunities." Dkt. 217 at 22. In addition, Plaintiffs contend:

> None of the lawyer defendants enjoy qualified immunity because, as licensed attorneys, they understood that lying to a court, violating their discovery obligations, and acting with others to "tilt the playing field" against the parents in the underlying dependency action is illegal, unethical, and unconstitutional. At a minimum, all defendants acted with "deliberate indifference" to plaintiffs' due process rights.

Dkt. 217 at 23.[9]  Plaintiffs do not address prosecutorial immunity.

Prosecutorial immunity applies to Section 1983 claims. *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). State prosecutors are absolutely immune from Section 1983 actions when "performing the traditional functions of an advocate." *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997)(citing *Imbler*, 424 U.S. at 431). Government civil attorneys are also entitled to absolute prosecutorial immunity when they take action that only a legal representative of the government could take. *Burton v. Infinity Capital Mgmt.*, 862 F.3d 740, 748 (9th Cir. 2017).

Defendant Di Vittorio states she performed the following functions in the dependency case:

> ▪     In November 2015 the VGAL Program asked her to attend a meeting where they requested legal advice regarding an exhibit that had been filed in the dependency case.

> ▪     At the meeting Defendant Di Vittorio learned that Plaintiff Aradon's dependency attorneys had filed a pleading with an exhibit that was a written grievance against a VGAL that had nothing to do with A.H.'s dependency case, and which had been discredited.

---

[9] In their Complaint Plaintiffs allege that after Plaintiff Aradon's attorneys filed a complaint against Defendant Walker, the VGAL Program "responded by contacting the Office of Public Defense with the goal of jeopardizing the funding of [Plaintiff Aradon's dependency counsel's law firm]" and Defendant Di Vittorio also wrote Plaintiff Aradon's dependency counsel "a letter threatening legal action for what she alleged were confidentiality violations." Dkt. 2-1 at 21. In addition, Plaintiffs allege Defendant Di Vittorio "engaged in retaliation, assisted in discovery violations, and [] litigation abuse with the ulterior motive of protecting the [VGAL Program] from detection of VGAL improprieties." *Id.* at 22.

- ▪ Defendant Di Vittorio also learned in this meeting that Plaintiff Aradon's dependency attorneys had been showing the grievance exhibit to other attorneys in the courthouse.

- ▪ Defendant Di Vittorio interpreted the sharing of an unfounded grievance against a VGAL as a violation of SCLJuCR 9.4—a local court rule in effect at the time stating that grievances filed against VGALs were "confidential until a finding of potential merit." Therefore, she drafted a letter to Plaintiff Aradon's dependency counsel asking them to cease and desist disclosing the confidential, dismissed grievance. Defendant Di Vittorio indicated that if they persisted "violating SCLJuCR 9.4 in this manner, my client will consider further legal steps."

- ▪ During the November 2015 meeting Defendant Di Vittorio also provided Defendant Haugen with a sample motion to strike information from a record, in response to Defendant Haugen asking if she knew of a method for redacting inaccurate information from a judicial record.

- ▪ Defendant Di Vittorio's next involvement was in September 2016, when she represented the Superior Court in Plaintiff Aradon's motion for sanctions against the VGAL Program. Defendant Di Vittorio avers that she was "asked to take the position that the Court was not a party to the case and could not be sanctioned. [She] was also [asked] to take the position that Judge Farris, as a member of the Superior Court bench should recuse herself because ruling on a motion against the Superior Court would be a conflict of interest."

Dkt. 51 at 1-4; Dkt. 192 at 10-12.

The Court finds the functions Di Vittorio performed all qualify as "traditional functions of an advocate" that only a legal representative of the government could take. Plaintiffs have not presented this Court with any admissible evidence upon which to conclude Defendant Di Vittorio is not entitled to prosecutorial immunity. *See generally*, Dkt. 217. Therefore, the Court recommends Defendant Di Vittorio's motion for summary judgment should be granted in its entirety.

3. Defendant Haugen

Defendant Haugen also insists she is immune from liability under the doctrines of qualified immunity and quasi-judicial immunity. Dkt. 182 at 11. At all relevant times, she served

as a full-time employee with Snohomish County in the Superior Court as a VGAL/CASA

Program attorney. Dkt. 87 at 1. Defendant Haugen argues she did not violate any of Plaintiffs'

constitutional rights, and that her actions were normal judicial functions "done at the direction of

the court", which involved a pending case, and that Plaintiffs' claims against her "arose directly

and immediately out of" disputes between the parties to the case. Dkt. 182 at 18.

Plaintiffs argue immunity does not apply to Defendant Haugen for the same reasons as

Defendant Di Vittorio, discussed *supra*.

Defendant Haugen avers she performed the following functions in the dependency case:

- In July and August 2015 she assisted the VGAL Program office in the compilation of documents in response to pre-trial discovery requests from Plaintiff Aradon's dependency case attorneys (splitting the production responsibilities with fellow staff attorney Gwen Forrest Reider).

- The documents were Bates labeled and produced through an online portal, www.box.com, which Plaintiff Aradon's dependency attorneys were given access to.

- Plaintiffs Aradon's attorneys later claimed they had not accessed 997 pages of the documents that had been produced via www.box.com, however none of those 997 Bates numbers were within the range of documents Defendant Haugen prepared and produced.

- Defendant Haugen was not involved in the termination trial, which occurred in Snohomish County Circuit Court from August 26, 2015 through September 2, 2015 or in responding to Judge Farris' *sue sponte* second set of discovery requests to the VGAL Program.

- On November 2, 2015 Defendant Haugen filed a motion to strike and redact portions of the termination trial transcript because she believed Judge Farris had made factual errors in her proposed findings in support of termination. Defendant Haugen believed Judge Farris inaccurately attributed to Defendant Walker actions taken by VGAL Brook, and also that Judge Farris made a finding on the record regarding an entirely different case that needed to be excised.

- Defendant Haugen learned later that a witness declaration that she submitted to support her motion to strike and redact contained an error, the details of which she does not recall, but she does recall promptly correcting the error in an amended declaration.

▪       On December 1, 2015 and December 3, 2015 Defendant Haugen participated in oral argument before Judge Farris. She recalls Judge Farris being upset about the VGAL Program, generally, Defendant Haugen maintains that every statement she made in during that oral argument was true and consistent with her obligations as an officer of the Court.

▪       After the oral argument Defendant Haugen became concerned that she had a conflict of interest so she withdrew from the case in January 2016, ending her involvement with the dependency case.

*See generally*, Dkt. 87; *see also*, Dkt. 182 at 6-9, 13-14.

Turning first to the application of qualified immunity to Defendant Haugen's role in the dependency case, qualified immunity attaches when an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)); *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018). The reasonableness of the officer's conduct is "judged against the backdrop of the law at the time of the conduct." *Kisela*, 138 S. Ct. at 1152 (quotation marks and citation omitted).

The Supreme Court has set forth a two-part analysis[10] for resolving government officials' qualified immunity claims. *See*, *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury … show [that] the [defendant's] conduct violated a constitutional right[.]" *Id*. at 201. Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Saucier*, 533g U.S. at 201; *Wood v. Moss*, 572 U.S. 744, 757 (2014).

---

[10] This Court may exercise its discretion in deciding which prong to address first in light of the particular circumstances of this case. *Liberal v. Estrada*, 632 F.3d 1064, 1076 (9th Cir. 2011).

1    "[W]hether a constitutional right was violated … is a question of fact." *Tortu v. Las*

2    *Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). "If there is no constitutional

3    violation, the inquiry ends and the officer is entitled to qualified immunity." *Ioane v. Hodges*,

4    903 F.3d 929, 933 (9th Cir. 2018). "[T]he 'clearly established' inquiry is a question of law that

5    only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017); *see also*, *Reese v.*

6    *Cty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).

7    Plaintiffs allege, under their sixth cause of action, that Defendant Haugen participated in

8    violating their due process rights and prolonging the dependency and lack of permanency of

9    A.H. Dkt. 1-1 at 19. However, Plaintiffs have not presented this Court with any admissible

10    evidence upon which to conclude Defendant Haugen's conduct violated any of their clearly

11    established statutory or constitutional rights. *See generally*, Dkt. 217.

12    Lack of evidence of a constitutional violation by the accused ends the qualified immunity

13    inquiry, and the Court therefore recommends Defendant Haugen be dismissed from this case as

14    she is immune from liability.

15    In addition, the Court finds Defendant Haugen is entitled to quasi-judicial immunity

16    because she was performing "judicial functions" at the direction of the Snohomish County

17    Superior Court.

18    "Courts have extended [] judicial immunity from damage actions under 42 U.S.C. § 1983

19    not only to judges but also to officers whose functions bear a close association to the judicial

20    process." *Demoran v. Witt*, 781 F.2d 155, 156 (9th Cir. 1986). "Judges and those performing

21    judge-like functions are absolutely immune from damage liability for acts performed in their

22    official capacities." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc); *see also*,

23

24

1  *Miller v. Davis*, 521 F.3d 1142, 1145 (9th Cir. 2008); *Partington v. Gedan*, 961 F.2d 852, 860

2  n.8 (9th Cir. 1992); *Houghton v. Osborne*, 834 F.2d 745, 750 (9th Cir. 1987).

3  "To determine if a given action is judicial …, courts [should] focus on whether (1) the

4  precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the

5  controversy centered around a case then pending before the judge; and (4) the events at issue

6  arose directly and immediately out of a confrontation with the judge in his or her official

7  capacity." *Ashelman*, 793 F.2d at 1075–76; *see also*, *Stump v. Sparkman*, 435 U.S. 349, 362

8  (1978); *Meek v. Cty. of Riverside*, 183 F.3d 962, 965-66 (9th Cir. 1999); *Partington v. Gedan*,

9  961 F.2d 852, 866 (9th Cir. 1992).

10  According to Defendant Haugen, she was employed by the Snohomish County Superior

11  Court as a staff attorney and her "ultimate supervisor" was the Presiding Judge. Dkt. 182 at 16.

12  She states that her job was to represent and assist volunteer guardian ad litems in dependency

13  cases, and that is precisely what she did in this case by performing the functions outlined above.

14  *Id*.

15  Plaintiffs appear to argue Defendant Haugen is not entitled to quasi-judicial immunity

16  because she was not acting as an "arm of the court at all times" as some of her actions in the

17  dependency case were not within her statutory duties. Dkt. 217 at 33. Plaintiff's point to

18  Cuthbertson's opinion as evidence. *Id*. at 33-34. However, for the reasons discussed, *supra*,

19  Cuthbertson is not an admissible expert. This argument also contradicts Plaintiff's theory under

20  their sixth cause of action, that Defendant Haugen "had no choice or ability to exercise

21  independent discretion as the lawyer for a [V]GAL by responding to discovery different from the

22  directives coming from her other client, the Superior Court". Dkt. 217 at 52. Under this theory

23  Defendant Haugen was acting as an "arm of the court at all times".

24

1    In any event, this Court finds no admissible evidence to support Plaintiff's argument that

2  Defendant Haugen acted outside her statutory duties in the dependency case. Instead, this Court

3  concurs with Defendant Haugen that she was performing judicial functions at the direction of the

4  Snohomish County Superior Court, who was her employer; that the controversy involved a

5  pending dependency case to which she had been assigned, and; that Plaintiffs' claim against

6  Defendant Haugen arose directly out of confrontations between Plaintiffs and parties in this case.

7  *See*, Dkt. 182 at 17-18. Accordingly, Defendant Haugen should be immune from liability and her

8  motion for summary judgment should be granted in its entirety.

9    4.  Defendant Walker

10    Defendant Walker[11] asserts she is immune from liability pursuant to the doctrine of

11  quasi-judicial immunity because she did not commit the acts Plaintiffs accuse her of,[12] but even

12  if she did she would still be entitled to quasi-judicial immunity. Dkt. 188 at 9. Defendant Walker

13  points to Wash. Rev. Code § 13.34.105(5)[13] to argue that guardian ad litems (GALs) are officers

14  of the court for purposes of civil liability. *Id*. at 10.

15

16  _____

17    [11] Defendant Walker was a VGAL Program Coordinator at the time of the dependency case. Dkt. 190 at 1.
Defendant Walker supervised VGAL Brook, who the Snohomish County Superior Court appointed to be A.H.'s
voluntary guardian ad litem on September 5, 2013. However, when VGAL Brook passed away unexpectedly in

18  January 2015 Defendant Walker took over as the VGAL in the dependency case until she withdrew from the case in
January 2016. *Id*. at 2.

19    [12] In their fifth cause of action for violation of the Fourth and Fourteenth Amendments, Plaintiffs allege
Defendant Walker participated "in making a false and misleading restrictive food list document" that contravened

20  VGAL Program rules and federal law, and was "calculated to harm Plaintiff Aradon and Hayes's chances of gaining
custody and control of their daughter." Dkt. 1-1 at 18. In addition, Plaintiffs allege Defendant Walker actively

21  worked "in favor of parental termination through inconsistent, dishonest and biased testimony at the termination
trial". *Id*. Therefore, according to this claim, Defendant Walker executed her VGAL Program duties "with reckless

22  and callous indifference to the Fourth Amendment and Fourteenth Amendment rights of A.H." and her parents by
"the prolonged dependency action where A.H. was continually removed from her parents for over seven years". *Id*.
at 19.

23
    [13] The Court presumes Defendant Walker is referring to Wash. Rev. Code § 13.34.105(2) which states "A

24  guardian ad litem shall be deemed an officer of the court for the purpose of immunity from civil liability."

1    A guardian ad litem may be afforded quasi-judicial immunity under RCW 13.34.105(2).

2    when "acting as an arm to the court at all times." *See*, *Kelley v. Pierce County*, 179 Wash. App.

3    566, 576 (2014) ("Because immunity exists to protect the functions one is performing, rather

4    than the person who is performing them, when a GAL is not acting within his statutory duties, he

5    is not acting as an "arm of the court" and cannot be entitled to quasi-judicial immunity.").

6    To determine whether a guardian ad litem's conduct is protected by quasi-judicial

7    immunity, the court employs a "functional approach" by examining "the nature of the functions

8    with which a particular official or class of officials has been lawfully entrusted, and … seek[s] to

9    evaluate the effect that exposure to particular forms of liability would likely have on the

10   appropriate exercise of those functions." *Forrester v. White*, 484 U.S. 219, 224 (1988); *see also*,

11   *Brooks v. Clark Cty.*, 828 F.3d 910, 917–18 (9th Cir. 2016) (concluding "neither precedent nor

12   first principles justify giving courtroom officials absolute immunity when they allegedly use

13   force in excess of what their judge commanded and the Constitution allows."); *Burton v. Infinity*

14   *Capital Mgmt.*, 862 F.3d 740, 747–48 (9th Cir. 2017) (applying functional approach); *Mishler v.*

15   *Clift*, 191 F.3d 998, 1002 (9th Cir. 1999); *Fry v. Melaragno*, 939 F.2d 832, 835 n.6 (9th Cir.

16   1991).

17   The eligibility inquiry for judicial immunity, then, turns on "the nature of the function

18   performed, not the identity of the actor who performed it." *See*, *Buckley v. Fitzsimmons*, 509 U.S.

19   259, 269 (1993) (citation and internal quotation marks omitted); *see also*, *Clinton v. Jones*, 520

20   U.S. 681, 695 (1997); *Waggy v. Spokane Cty. Wash.*, 594 F.3d 707, 710–11 (9th Cir. 2010);

21   *Cousins v. Lockyer*, 568 F.3d 1063, 1068 (9th Cir. 2009); *Botello v. Gammick*, 413 F.3d 971, 976

22   (9th Cir. 2005); *KRL v. Moore*, 384 F.3d 1105, 1113 (9th Cir. 2004); *cf.*, *Richardson v.*

23

24

1  *McKnight*, 521 U.S. 399, 408–09 (1997) (explaining that mere performance of governmental

2  function does not entitle private person to absolute or qualified immunity).

3         According to Defendant Walker her functions as a GAL in the dependency case were

4  within the scope of the VGAL's duties described in Wash. Rev. Code § 13.34.105, including

5  investigating Plaintiff A.H.'s circumstances and making recommendations to the court regarding

6  A.H.'s best interests. Dkt. 188 at 12.Plaintiffs concede that GALs may be shieled by quasi-

7  judicial immunity when acting within their statutory duties, but point to several instances where

8  they assert Defendant Walker was not acting within those duties. Dkt. 217 at 33. The Court

9  considers each of these areas separately and concludes Defendant Walker acted within these

10  statutory duties in each instance.

11        Defendant Walker states she did not make a "fake food list" as Plaintiffs allege. Dkt. 188

12  at 11. Indeed, the Court finds the evidence shows the "fake food list" Plaintiffs allege Defendant

13  Walker prepared was made by foster mother J.B., who declared under penalty of perjury that she

14  created it with the assistance of Plaintiff A.H.'s pediatrician in order to address A.H.'s early

15  childhood food sensitivities. *See*, Dkt. 94-6 at 3-6.

16        Next, Defendant Walker admits she recommended, in May 2015, that visitation between

17  Plaintiff A.H. and Plaintiffs Aradon and Hayes not be moved to Plaintiff Aradon's home due to

18  continued domestic violence disputes between Aradon and Hayes during the course of the

19  dependency and Aradon's failure to establish that she and Hayes were not living together. Dkt.

20  188 at 13. Defendant Walker contends this recommendation was within the scope of her GAL

21  functions, and did not interfere with continued visitation outside of Aradon's home. *Id*. The

22  Court concurs with Defendant Walker that this recommendation was within the scope of her

23  GAL functions.

24

1    With regard to the allegation that Defendant Walker shared confidential information

2    about Plaintiffs Aradon and Hayes with foster mother J.B. (Dkt. 188 at 13-14), Plaintiffs have

3    not submitted any admissible evidence to support this claim.

4    Defendant Walker does not dispute she recommended Plaintiffs Aradon and Hayes'

5    parental rights be terminated, which "was in line with the State's filing of the termination

6    petition and evidence presented by various witnesses to the court [regarding] parental

7    deficiencies. Dkt. 188 at 14 (citing Dkt. 90 at 7; Dkt. 94 at 4-5).The Court concurs with

8    Defendant Walker that this recommendation was consistent with her functions as a GAL.

9    Defendant Walker next disputes Plaintiffs' allegation that she intentionally lied while

10   testifying at the termination trial that she was unaware VGAL Brook sent Plaintiff Aradon and

11   Hayes' criminal history information to the Amara adoption agency working with foster mother

12   J.B. Dkt. 188 at 15-6. Defendant Walker indicates in a sworn declaration that her inaccuracy was

13   unintentional:

14   > In preparation for the termination trial in August 2015, I spent my personal time on
   > the preceding weekend reviewing thousands of pages of discovery produced by the

15   > VGAL program. This discovery produced contained emails, and some of those
   > emails had attachments. **However, none of the emails provided in discovery**

16   > **included such attachments as agreed by the VGAL program and the parents'**
   > **attorneys.** The parents' attorney even acknowledged the agreement in court and

17   > clarified they were not asking them to be produced. Since these attachments were
   > never produced in discovery, I did not review any attachments to emails prior to

18   > my testimony at the termination trial. At trial, I took an oath, and responded to
   > questions on direct and cross examination. **During the cross examination, I was**

19   > **asked about attachments to emails that I either had never received or had not**
   > **reviewed in preparation for my testimony.** In response to those questions, I

20   > unintentionally provided inaccurate testimony due to the absence of the attachments
   > to the emails when I reviewed them.

21   Dkt. 94 at 6 (emphasis added).

22   Both private individuals and government officials who serve as witnesses are absolutely

23   immune from suit for damages with respect to their testimony in an adversarial hearing. *See*,

24

*Briscoe v. LaHue*, 460 U.S. 325, 326 (1983); *Paine v. City of Lompoc*, 265 F.3d 975, 980 (9th Cir. 2001); *Franklin v. Terr*, 201 F.3d 1098, 1101–02 (9th Cir. 2000); *Meyers v. Contra Costa Cty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1156 (9th Cir. 1987); *see also*, *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1241 (9th Cir. 2015); *Cruz v. Kauai Cty.*, 279 F.3d 1064, 1068 (9th Cir. 2002). Thus, even if it is true that Plaintiffs' allegation that Defendant Walker intentionally lied while testifying at the termination trial, Defendant Walker's function of testifying at adversarial hearings is protected by absolute immunity and her motive does not matter. *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985).

Finally, Defendant Walker states "there is no evidence [her] actions prolonged the dependency proceeding." Dkt. 188 at 14. Plaintiffs have not presented any admissible evidence that Defendant Walker did anything outside of her function as a GAL to prolong the dependency case. As a result, Defendant Walker's motion for summary judgment should be granted in its entirety.

**B.  Statute of Limitations**

Defendants contend all the claims of Plaintiffs Aradon and Hayes (parents of A.H. and A.L) are time barred. While each Defendant argues a different accrual date applies to them based upon when their involvement with the dependency case ended,[14] they all argue that Plaintiffs had

---

[14] Defendant Haugen states that Plaintiffs' 2015 motion for sanctions and 2016 Bar complaint against her demonstrate they were well aware of Defendant Haugen's actions in 2015, meaning that the statute of limitations for their claims ran in 2018. Dkt. 182 at 10-11.Defendant Walker states that Plaintiffs were aware of all her alleged actions no later than March 4, 2016, the date Plaintiffs filed their motion to vacate the order terminating their parental rights based on alleged wrongful actions taken by her. Dkt. 188 at 31. The County and Defendant Di Vittorio state: "Viewed generously in favor of Plaintiffs, Plaintiffs' claims against Defendants began to accrue, at the latest, after Judge Small denied Plaintiffs' attorneys' motions for sanctions and motions for CR 59 and CR 60 against the court on October 6, 2017." Dkt. 192 at 20-21.

1  the right to seek relief as soon as they knew or should have known of the claimed actions, not

2  when their parental rights were "restored."

3       Although Plaintiffs concur with Defendants that the Statue of Limitations in this case is

4  three years, they disagree about when it began to accrue. According to Plaintiffs, the statute has

5  not even begun to run in the case of Plaintiffs A.H. and A.L. Dkt. 217 at 75.[15] As for Plaintiffs

6  Aradon and Hayes, they contend the statute did not begin to run until August 12, 2019 when the

7  Washington Court of Appeals reversed and remanded the parental termination order, because

8  their "parental rights [were] suspended shortly after A.H. was born, and subsequently

9  terminated" and were not "restored" until the Washington Court of Appeals opinion issued. *Id*. at

10  76 (*citing Matter of Dependency of A.E.T.H.*, 9 Wn. App. 2d. 502 (2019)).

11       42 U.S.C. § 1983 (Section 1983) does not contain a statute of limitations, so federal

12  courts borrow state statutes of limitations for personal injury actions in civil rights cases. *See*

13  *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). A three-year statute of limitations applies in

14  Washington. RCW § 4.16.080; *RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1058 (9th

15  Cir. 2002). A civil rights action accrues and the statute of limitations begins to run when a

16  plaintiff knows or has reason to know of the injury which is the basis of his or her action. *Bagley*

17  *v. CMC Real Estate Corp.,* 923 F.2d 758, 760 (9th Cir. 1991).

18       While the statute of limitations period is determined by state law, the "accrual date"

19  or date the statute of limitations begins to "run" in a Section 1983 case is determined by

20  federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (noting that "the accrual date of a

21  § 1983 cause of action is a question of federal law"); *Pouncil v. Tilton*, 704 F.3d 568, 573

22

23

24  [15] Defendants do not dispute that the statute of limitations for minor Plaintiffs A.H. and A.L. is tolled until they turn 18, pursuant to RCW 4.16.190. *See e.g*., Dkt. 188 at 30.

1  (9th Cir. 2012) (stating that "[f]ederal law determines when a cause of action for a Section

2  1983 claim accrues and, hence, when the statute of limitations begins to run"). "Under

3  federal law, a cause of action accrues when the plaintiff knows or has reason to know of

4  the injury that is the basis of the action." *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir.1996);

5  *Pouncil*, 704 F.3d at 574. Thus, "[a]n action ordinarily accrues on the date of the injury."

6  *Id.*

7          In this case, the Court finds the latest date Plaintiffs knew or had reason to know of the

8  alleged injuries that form the basis of their causes of action in this case was May 17, 2017, when

9  Judge Farris issued the Farris Memo. Dkt. 37-2 through 37-9. Notably, this accrual date provides

10 every benefit of the doubt to Plaintiffs, considering Judge Farris issued her oral termination

11 ruling in September 2015, and her memorandum decision was the culmination of a years-long

12 investigation into alleged wrongdoing by Defendants, initiated by Plaintiffs who also pursued

13 parallel bar ethics complaints against the individual Defendants. Notably, Plaintiffs rely on the

14 Farris Memo in supporting their case. As Plaintiffs filed their Complaint in King County

15 Superior Court on October 16, 2020 more than three years after Judge Farris entered the Farris

16 Memo on May 17, 2017, all the claims of Plaintiffs Aradon and Hayes  are time barred. Dkt. 2-1.

17         Moreover, there is simply no merit to Plaintiffs' contention that they did not have

18 standing to bring their case until their parental rights were "restored" by the Washington Court of

19 Appeals opinion, *Matter of Dependency of A.E.T.H.*, 9 Wn. App. 2d. 502 (2019)), or even that

20 the Washington Court of Appeals opinion "restored" their parental rights. The opinion reversed

21 the parental rights termination order and remanded for a new trial—a trial that has still not

22 occurred as of this writing—and Plaintiff A.H.'s dependency case remains open. *Id*. at 530-531;

23

24

1   *see generally* Dkt. 2-1. In conclusion, the Court finds Plaintiffs Aradon and Hayes's claims are

2   time-barred and should therefore be dismissed.

3   **C.  Plaintiff A.L. Lacks Standing**

4          Plaintiff A.L. is purportedly a minor child of Plaintiffs Aradon and Hayes, born after

5   Plaintiff A.H., who "resides with Aradon and Hayes." Dkt. 1-1 ¶ 2.1. On June 10, 2022 this

6   Court appointed Bruce Wolf to serve as the Litigation *Guardian ad Litem* (GAL Wolf) for A.L.

7   Dkt. 161. The Court also directed GAL Wolf to file a status report indicating whether he

8   believed additional discovery on behalf of A.L. was necessary. *Id*. at 6. On July 19, 2022 the

9   Court granted Plaintiffs' request, supported by GAL Wolf, to reopen discovery for the "limited

10  purpose of executing the subpoena duces tecum on [Plaintiff A.H.'s foster mother, J.B.] and

11  requesting and completing (if leave is granted by this Court) any depositions related directly

12  thereto." Dkt. 172 at 4.

13         Most courts, including Washington state courts and the Ninth Circuit, reject loss of

14  consortium claims brought by siblings, who typically can only recover for the wrongful death of

15  their sibling when that sibling was not survived by a spouse. *See*, RCW 4.20.020 ("If there is no

16  spouse, state registered domestic partner, or such child or children, such action may be

17  maintained for the benefit of the parents or siblings of the deceased."); *Ward v. City of San Jose*,

18  967 F.2d 280, 284 (9th Cir. 1991), as amended on denial of reh'g (June 16, 1992)(reasoning that

19  legislative history and Supreme Court precedent do not support an interest for siblings consonant

20  with that recognized for parents and children).

21         Plaintiffs' reliance on state cases involving claims by minors for loss of consortium of a

22  parent, and claims by parents for loss of consortium of a child, and spousal claims for loss of

23  consortium are inapposite. Dkt. 217 at 79-80. Plaintiffs invite the Court to "expand the common

24  law and recognize a cause of action" for sibling loss of consortium "to meet the evolving

standard of justice". *Id*. at 80-81. However, Plaintiffs have not provided any legal showing for doing so, and have failed to provide legal authority to support A.L.'s claims.

Finally, it bears noting that, according to Defendants, Plaintiffs have not produced any evidence to support their claims of psychological and emotional damages for any Plaintiff in this case, much less Plaintiff A.L. S*ee e.g*., Dkt. 192 at 32.

A review of Plaintiffs' discovery responses to Defendants indicates Plaintiffs intended to create evidence of Plaintiff A.L's alleged damages through the assessment of medical expert Kliman's report and testimony. *Id*.; Dkt. 217 at 81; Dkt. 89-1 at 10. However, since the Court has excluded Plaintiffs' proposed medical expert, Kliman, any such evidence is not before the court. Dkt. 252. Thus, even if Plaintiff A.L. had standing to bring claims for loss of consortium of his sibling, his inability to establish damages—an essential element of every cause of action in this case, which exclusively seeks remedies at law—would still require the Court to recommend all of Plaintiff A.L's claims for relief be dismissed. *See Celotex*, 477 U.S. at 323

## D.    Plaintiff A.H.'s Section 1983 Claims against the County

With the dismissal of all claims of Plaintiffs' Aradon, Hayes, and A.L., A.H. is the only remaining Plaintiff and will hereinafter be referred to simply as "Plaintiff".

The Court has determined an appropriate sanction for the County's spoliation of ESI is denial of summary judgment and has recommended summary judgment be denied as to the federal claims alleged against the County in Plaintiff's Fourth, Fifth, and Sixth Causes of Action. Dkt. 251. Therefore, the Court need not further consider the County's arguments that summary judgment should be granted. Nevertheless, because denial of summary judgment is a more severe sanction, the Court analyzed the County's summary judgment arguments.

1    As discussed below, the Court finds that genuine issues of material fact remain related to

2    the federal claims alleged against the County and includes this analysis as an alternative basis to

3    deny the motion for summary judgment on those claims.

4    In the Fourth, Fifth, and Sixth Causes of Action, Plaintiff asserts Section 1983 causes of

5    action against the County alleging violations of her Fourth and Fourteenth Amendment rights.

6    An unconstitutional "prolonged seizure" under the Fourth Amendment occurs when a

7    government official continues to hold a person after the original legal justification for the seizure

8    ceases to exist. *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017).A Fourteenth Amendment

9    procedural due process violation occurs when a person is denied the opportunity to be heard "at a

10   meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965);

11   *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) (the procedural due process guarantee protects against

12   "arbitrary takings", or in the exercise of power without any reasonable justification in the service

13   of a legitimate governmental objective).

14   A Fourteenth Amendment substantive due process violation occurs when a parent or

15   child's well-established liberty interest in the "companionship, care, custody, and management of

16   [their child/parent]" is violated. *Lassiter, v. Dep't of Social Serv. of Durham County, N.C.*, 452

17   U.S. 18, 27 (1981); *see also*, *Daniels v. Williams*, 474 U.S. 327, 328, 331 (1986) (the substantive

18   due process guarantee protects against government power arbitrarily and oppressively exercised;

19   liability for negligently inflicted harm is categorically beneath the threshold of constitutional due

20   process).

21   1.    Fourth Cause of Action - Violation of the Fourteenth Amendment

22   In her fourth cause of action Plaintiff alleges the Snohomish County VGAL Program (the

23   VGAL Program) was "enmeshed and intertwined" with the Snohomish County Superior Court

24

1    (the state court) such that VGAL Program employees and state court employees became "one

2    and the same". Dkt. 2-1 at 16. Plaintiff further alleges the VGAL Program withheld and

3    destroyed evidence in the dependency case, and by "negligent training and supervision created a

4    custom, pattern and policy that prevented a fair dependency and termination adjudication"

5    thereby depriving Plaintiff of her due process rights vis-à-vis VGAL Program staff "striving for

6    termination of [her parents] parental rights", misrepresenting facts, withholding information,

7    participating in the destruction of evidence and violating court rules. *Id*. at 17.

8       Municipalities may be held liable under § 1983 when a governmental policy or custom

9    inflicts a constitutional injury. *Monell v. New York City Dep't of Social Servs*., 436 U.S. 658,

10   690-91 (1978). A *Monell* claim may be stated under three theories of municipal liability: (1)

11   when official policies or established customs inflict a constitutional injury; (2) when omissions

12   or failures to act amount to a local government policy of deliberate indifference to constitutional

13   rights; or (3) when a local government official with final policy-making authority ratifies a

14   subordinate's unconstitutional conduct. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232,

15   1249–50 (9th Cir. 2010); *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).

16      Here, Plaintiff argues the County is liable under the second theory of liability, alleging

17   the VGAL Program's "de facto" policy of failing to train its employees and volunteers amounted

18   to deliberate indifference to Plaintiff's constitutional rights. Dkt. 217 at 47-54.

19      To prove Section 1983 municipal liability based on a failure to train, Plaintiff must show:

20   (1) the existing training program is inadequate in relation to the tasks VGAL Program employees

21   and volunteers must perform; (2) the failure to train amounts to deliberate indifference to the

22   rights of persons with whom they owed a duty; and, (3) the inadequacy of the training actually

23   caused the deprivation of the alleged constitutional right. *Merritt v. Cty. of Los Angeles*, 875 F.2d

24

765, 770 (9th Cir. 1989). "[T]he need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that policymakers ... can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

Plaintiff must prove four elements to establish *Monell* liability: "'(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *see also*, *City of Canton v. Harris*, 489 U.S. 378, 388–90 (1989) (local governments may be held liable under Section 1983 for inadequate training only where the failure to train amounts to deliberate indifference to the rights of persons with whom government employees come into contact).

A municipality cannot be held liable "solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [Section] 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section] 1983." *Id*. at 694.

Turning to the first *Monell* factor, there is no dispute that Plaintiff possessed a constitutional right to procedural and substantive due process. According to Plaintiff, the violation of these rights has been "juridically established" by the Washington Court of Appeals, and is also shown through "expert opinions". Dkt. 217 at 34. While Plaintiff does not have an admissible expert who can testify that Plaintiff A.H.'s due process rights were violated, she is

correct that the Washington Court of Appeals determined, *inter alia*, that her due process rights were violated. *Matter of Dependency of A.E.T.H.,* 9 Wash. App. 2d 502, 520 (2019), cert denied, *In re A.E.T.H.*, 195 Wash. 2d 1013 (2020).

The County argues the VGAL Program's involvement in the dependency case did not violate Plaintiff's constitutional rights. Dkt. 192 at 23. However, their argument conflates several factors. The first *Monell* factor simply asks: did Plaintiff possess a constitutional right and was it violated? The answer, according to the Washington Court of Appeals, is yes and yes. Therefore, the Court finds that Plaintiff has shown sufficient evidence that her constitutional right to due process was violated, meeting the first element of *Monell*.

Second, Plaintiff argues there was a systemic pattern and policy by the VGAL Program to "implement a scheme to bypass mandatory state laws, requirements, and controls that apply to individual appointed GALs." Dkt. 217 at 27. This scheme amounted to the "de facto" policy or custom of the VGAL Program to fail to adequately train staff. Plaintiff cites to "internal documents" that allegedly contain admissions of such failure, as well as Cuthbertson's expert opinion, as evidence of this de facto policy or custom. Dkt. 217 at 48.

For the reasons discussed, *supra*, Cuthbertson is not an admissible expert and the Court is not considering his declaration. However, Plaintiff also presents "internal documents" which reference:

- An unsigned letter dated April 26, 2016, which they claim Defendant Walker helped draft—referred to as a" To Whom It May Concern" letter—wherein VGAL Program leaders complain about the **lack of any instruction manual** or **comprehensive policy and procedure manual**, and the **lack of any training** "relating to the legality, policy or structure of the Snohomish County Superior Court or Guardians ad Litem (GAL-Rs) in the State of Washington. Dkt. 125-40 (emphasis added).

- An April 28, 2016 agenda showing Defendant Walker attended a VGAL Program Coordinator Union Meeting where issues regarding **failure to train**,

**workload**, and failure to provide legal assistance were among the topics discussed. Dkt. 125-41 (emphasis added). Concern is expressed that failure to train will have a **"negative impact on families in general."** *Id*. (emphasis added).

▪        A January 13, 2016 letter from various GALs and Program Coordinators, including Defendant Walker, to the Administrator of Snohomish County Superior Court regarding **policies and training concerns and program funding issues**. Dkt. 125-39 (emphasis added).

In their reply the County does not directly address this evidence, but again conflates the *Monell* factors, reiterating their position that "the harm [Plaintiffs] allege in this action cannot be attributed to Defendants' conduct or the County's policies and practices." Dkt. 222 at 17. The second *Monell* factors asks: did the County have a de facto policy? The Court finds the above evidence is enough to create a material question of fact whether the County had a de facto policy to not train VGAL Program employees and volunteers. *See, City of Canton v. Harris*, 489 U.S. 378, 404 (1989)(a custom can be one of action or inaction and need not be formally approved by the entity).

The third *Monell* factor requires Plaintiffs to prove that such a de facto policy amounted to deliberate indifference to Plaintiff A.H.'s procedural and substantive due process rights. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)(*Monell* claims based on a "failure to train" or "failure to supervise" theory must still meet the "deliberate indifference" standard to be viable; "[m]ere negligence in training or supervision … does not give rise to a *Monell* claim."

 "Deliberate indifference" of an official policy requires proof that a municipal actor disregarded a "known or obvious" consequence of the Program's policies. *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011). Specifically, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Board of County Com'rs of Bryan County, Okl. v.*

*Brown*, 520 U.S. 397, 411 (1997). The legal inquiry specifically asks whether the "plainly

obvious consequence" of a policy decision would lead to the particular constitutional injury

suffered by the plaintiff. *Id*. The connection between the policy decision "and the specific

constitutional violation alleged must be strong" to establish municipal liability. *Id*. at 412.

Plaintiff contends the "plainly obvious consequence" of a de facto policy of failing to

train VGAL Program employees and volunteers was that policies, procedures, and rules would

not be followed, resulting in due process violations and prolonged dependency cases. The

County states that "even assuming *arguendo*, that Plaintiffs' factual allegations regarding the

training handbooks are true, this argument fails to address how this 'failure to train' relates to

their claimed due process deprivations". Dkt. 222 at 17. The problem with Plaintiff's theory,

according to the County, is that her alleged harm "cannot be attributed to Defendants' conduct or

the County's policies and practices [because] VGALs—irrespective of their level of training—

have no legal authority to render placement or termination decisions …". *Id*.; Dkt. 192 at 23. The

reason for Plaintiff's prolonged dependency, according to the County, is her biological parents'

prolonged non-compliance with the legal requirements to regain custody of her. Dkt. 192 at 29.

The County presents the Court with a sworn declaration by retired Snohomish County

Superior Court Judge Linda C. Krese, who declares that "prior to July 1, 2018, almost all

[dependency] cases were brought by [DSHS]" as was the case in Plaintiff A.H.'s dependency

petition. Dkt. 90 at 3-7. Judge Krese sets forth the following relevant, admissible facts:

> ▪ The filing of the dependency petition begins a judicial process in which the superior court must determine whether the child is dependent. If the DSHS is requesting out of home placement at the outset of the process, **the court must hold a shelter care hearing to determine whether the child should remain out of the care of the parent or guardian during the pendency of the dependency** as provided by RCW 13.34.065. All parties, including the Department, parent, guardian, or legal custodian of the child, have the right to present testimony at the shelter care hearing. The parents also have the right to be represented by an attorney

and, if a parent cannot afford an attorney, one is appointed for them before the hearing. RCW 13.34.092. If the court determines that the child cannot be safely returned home at that time, **the court shall order placement with a relative or suitable other person or** if such placement is not available or does not meet the statutory requirements, **the court shall order shelter care placement through the DSHS**. The court must also enter orders regarding visitation by the parent(s) or guardian.

▪       If the child is not returned home at the shelter care hearing, **the court must hold a review hearing six months after the date of placement and at least every six months thereafter**. RCW 13.34.138(1)(a) and (2)(a). In addition, if the child remains in out-of-home care, the court must have a permanency planning review hearing within twelve months of placement and every twelve months thereafter. RCW 13.34.145(1)(a) and (10).

▪       After the shelter care hearing takes place, pursuant to RCW 13.23.110, **the court shall hold a fact-finding hearing on the dependency petition** to determine whether the child is dependent as defined by RCW 13.34.030. If the parent either stipulates to a dependency or the court finds by a preponderance of the evidence that the child is dependent after a fact-finding hearing, the court will enter an order of dependency as to the child. **The court must also enter a dispositional order** that either orders return of the child or continued out of home placement in the custody "of a relative or other suitable person, the department, or agency responsible for supervision of the child's placement" (RCW 13.34.130(1)(b), **orders services for the parent(s) to complete to remedy any parental deficiencies found by the court, services to be provided the Department, and sets the type and frequency of visitation the parents shall have with the child.** If the court does not find that the petitioner has established the statutory grounds for dependency, the petition is dismissed.

▪       Pursuant to RCW 13.34.100, **the court "shall appoint a guardian ad litem for a child"** who is subject to a dependency preceding, "unless the court for good cause finds the appointment unnecessary." RCW 13.34.100 presumes that the appointed guardian ad litem will be a volunteer but allows for appointment of "another suitable person" if a volunteer is not available. RCW 13.34.030(13) authorizes the superior court to establish a volunteer guardian ad litem program "to manage all aspects of volunteer guardian ad litem representation for children alleged or found to be dependent. Such management shall include but is not limited to: Recruitment, screening, training, supervision, assignment, and discharge of volunteers." In Snohomish County, the VGAL Program performed these functions. RCW 13.34.100(5) states that the "**guardian ad litem through an attorney, or as otherwise authorized by the court, shall have the right to present evidence, examine and cross-examine witnesses, and to be present at all hearings.**" The GAL is also to receive copies of all documents submitted to the court and notice of all hearings and "receive all notice contemplated by a parent or other party."

■    The **GAL's duties** are set forth in RCW 13.34.105 and include **investigating and collecting relevant information** about the child's situation and **reporting** factual information to the court with regard to the child's best interests. RCW 13.34.105(1)(e) provides that the GAL "**may make recommendations** based upon an independent investigation regarding the best interests of the child, which **the court may consider and weigh in conjunction with the recommendations of all the parties.**"

■    Decisions as to visitation, placement, and services are made by the court as reflected in court orders. **The VGAL program and individually appointed VGALs have no legal authority** to make such decisions and do not make decisions as to these issues. No VGAL, GAL, or VGAL Program have authority to make decisions **regarding placement, visitation, guardianship, or any other material decision regarding parental rights**.

■    **Petitions to terminate parental rights are filed by the DSHS when it perceives that the parent is not making adequate progress toward reunification with the child.** If such a petition is filed and not resolved by agreement, default, or dismissal by DSHS based on parental progress after filing, the case is assigned to a superior court judge for a termination fact finding. A **VGAL may recommend the filing of a petition** to terminate parental rights as in the best interests of the child but **does not file** such a petition **or have any legal authority to require filing of such a petition**. The court may order the filing of a petition to terminate parental rights pursuant to RCW13.34.132 if certain requirements are met. In addition, **at an annual permanency planning review, a superior court judge "shall order [DSHS] to file a petition seeking termination of parental rights if the child has been out-of-home care for fifteen of the last twenty two months** since the date the dependency petition was filed unless the court makes a good cause exception as to why the filing of a termination petition is not appropriate." RCW 13.34.145(5).

Dkt. 90 at 3-7 (emphasis added). While Judge Krese's explanation of how the dependency system in Snohomish County was designed to work is helpful for background, it does not address Plaintiff's theory of causation.

Plaintiff claims that when it came to the VGAL Program's role within the system, the de facto policy of failing to train employees and volunteers amounted to deliberate indifference to the consequences of VGAL Program employees and volunteers not knowing, for instance, that the rules and regulations required VGALs and GALs to always act in the best interest of the child (who needs permanency), to maintain independence, to avoid conflicts of interest, to

maintain the privacy of the parents and treat them with respect, and to be candid with the tribunal and timely inform the state court of relevant information. *See*, Superior Court GAL Rules 2(a) through (p). On these points, the Court finds particular salience in the following statements contained in the January 13, 2016 letter from various GALs and Program Coordinators to the administrator of the Snohomish County Superior Court:

- No Program Coordinator "has been offered either a manual of instruction of a comprehensive policy and procedure handbook".

- At least one Program Coordinator "requested formal training for the role of [Program Coordinator], but was told instead to "ask questions".

- Another Program Coordinator was told the position was too "unpredictable" and that "situations changed too frequently" to create a procedure manual.

- Program Coordinators were told to write their own manual if they needed one.

- In early 2015 the County approved the purchase of "CASA Manager" case management software designed to organize case files, but a year later, at the time the letter was written, it was still not available to the VGAL Program.

- "Most program 'policies' were provided verbally during staff meetings, and very often were not uniformly communicated to all staff members." Resultantly, "managerial enforcement of 'policies' was capricious—individual staff members at all levels were held accountable to varying degrees and in unpredictable ways."

- Program Coordinators were not offered training regarding how to be "professional paid GALS" or even told they "would be subject to the regulations of the GALRs".

- Program Coordinators consistently "expressed a concern that the safety of children would be compromised and the integrity of the VGAL Program would be in jeopardy since the efficiency of the PC/GAL would dimmish on both fronts if PCs were required to assume the numerous duties of GAL in addition to managing the required caseload of 30 volunteers and 80 additional children."

Dkt. 125-39 at 2-3. The Court's review of the above referenced "internal documents" reveals sufficient evidence to support a genuine factual dispute whether due process violations and

1  prolonged dependency were plainly obvious consequences from failing to train VGAL Program
2  staff.

3       The fourth *Monell* factor asks whether the policy was the "moving force" behind the
4  constitutional violation.

5       The County's contention that the VGAL Program did not have the authority to prolong
6  dependency and therefore could not be the moving force behind the due process violations does
7  not address the nuance in Plaintiff's argument. Plaintiff agrees the VGAL Program should not
8  have been able to prolong her dependency and lack of permanency, but contends its failure to
9  properly train VGAL Program employees and volunteers resulted in them committing
10 constitutional violations which had that effect. Defendant Walker did state under oath at a March
11 24, 2016 post-termination hearing before Judge Farris that the failure to disclose VGAL Brook's
12 rules violations harmed Plaintiff and resulted in a prolonged dependency and lack of
13 permanence. Dkt. 215-1 at 35.

14      In sum, the Court finds a genuine factual dispute whether, assuming the VGAL program
15 had a de facto policy of failing to train its staff, that policy was the "moving force" behind
16 Plaintiff's alleged constitutional violations. Therefore, the County's motion for summary
17 judgment to dismiss Plaintiff's Fourth Cause of Action for violation of the Fourteenth
18 Amendment should be denied.

19      2.    Fifth Cause of Action- Violation of Fourth and Fourteenth Amendments

20      In their fifth cause of action Plaintiff realleges the theory that the VGAL Program had a
21 "custom, policy or practice of failing to properly train, supervise and maintain [VGAL Program
22 staff], which the County "either knew or should have known" about. Dkt. 1-1 at 17. Plaintiff
23 further alleges that Defendant Walker participated "in making a false and misleading restrictive

24

food list document" that contravened VGAL Program rules and federal law, and was "calculated to harm Plaintiff Aradon and Hayes's chances of gaining custody and control of their daughter." *Id*. at 18. In addition, Plaintiffs allege Defendant Walker actively worked "in favor of parental termination through inconsistent, dishonest and biased testimony at the termination trial". *Id*. Therefore, according to this claim, Defendant Walker executed her VGAL Program duties "with reckless and callous indifference to the Fourth Amendment and Fourteenth Amendment rights of A.H." and her parents by "the prolonged dependency action where A.H. was continually removed from her parents for over seven years". *Id*. at 19.

For the reasons stated, *supra*, the Court finds genuine factual disputes exist regarding the County's *Monell* liability, and therefore does not revisit them here. Thus, the County's motion for summary judgment to dismiss Plaintiff's Fifth Cause of Action for violation of the Fourth and Fourteenth Amendment should be denied. Since the Court recommends that Defendant Walker's motion for summary judgment be granted in its entirety, there is no need to analyze Plaintiff's arguments under the fifth cause of action as they relate to Defendant Walker.

3.    Sixth Cause of Action: Snohomish County and Defendants Haugen and Di Vittorio Fourth and Fourteenth Amendments

In the sixth cause of action Plaintiff alleges the VGAL Program was an "arm of the Snohomish County Superior Court" at the time of Plaintiff A.H.'s dependency case, and VGAL Program "staff attorneys took an active role in litigation advancing the [VGAL Program's] position", including Defendant Haugen in this case. Dkt. 1-1 at 20. In addition, Plaintiff alleges Snohomish County Superior Court judges and senior court administration staff were directly involved in the workings of the VGAL Program as "no screening mechanism [existed] to avoid improper *ex parte* contact regarding ongoing cases." *Id*. Plaintiff further alleges that when the VGAL Program needed legal advice it consulted with several civil deputy attorneys at the

1   Snohomish County Prosecutor's Office, such as Defendant Di Vittorio, "who advised the judges

2   *ex parte* on legal issues, and represented the [VGAL Program] in A.H.'s case." *Id*. As such,

3   Plaintiff alleges the Snohomish County Superior Court "implemented discovery policies that

4   protected VGALs from have to produce documents thought to be sensitive". *Id*. In Plaintiff's

5   particular case, she alleges the VGAL Program discriminated against Plaintiff Aradon's

6   dependency counsel's law firm "by implementing a policy making production of documents

7   more expensive" for them, attempted to jeopardize their funding, and threatened legal action

8   against them for alleged "confidentiality violations". *Id*. at 21. Finally, Plaintiff alleges that

9   Defendants Haugen and Di Vittorio "hid relevant discovery, delayed production of documents,

10   and misrepresented and failed to disclose relevant information sought by [Plaintiff] in

11   discovery". *Id*. at 21-22.

12          As the Court recommends that Defendant Haugen' and Defendant Di Vittorio's motions

13   for summary judgment be granted in their entirety, there is no need to analyze Plaintiff's

14   arguments under the sixth cause of action as they relate to Defendants Haugen and Di Vittorio.

15          With regard to whether the County is liable under the *Monell* doctrine for the sixth cause

16   of action, Plaintiff points to a transcript of a November 4, 2016 hearing before Judge Farris,

17   attached as one of dozens of exhibits to the Declaration of Attorney Withey, but does not provide

18   pinpoint citation to it. Dkt. 217 at 51; Dkt. 125. Assuming the transcript reads as Attorney

19   Withey transcribes it in his Declaration, it states:

20          COURT: Were judges involved in the decision to bring the motion to strike and
            redact? **Were you representing judges?**

21

22          MS. DI VITTORIO: **I was representing Snohomish County Superior Court,
            who is my client.**

23          COURT: To your knowledge, is there any wall right now between the superior
            court and the judges in these VGAL dealings?

24

1

2

MS. DI VITTORIO: **I don't know what kind of wall you would be referring to**, Your Honor.

3

*See,* Dkt. 125 at 31-32 (emphasis added). The significance of this colloquy, according to

4

Plaintiff, is that it proves the VGAL Program was not independent from the Snohomish County

5

Superior Court.

6

Next, Plaintiff contends Defendant Di Vittorio changed the name of the VGAL Program

7

to "the Snohomish County Superior Court" in her letter to [Plaintiff Aradon's dependency

8

counsel's law firm]. Dkt. 125 at 33. The letter is absent from the record before the Court. Instead

9

Plaintiffs relies upon Attorney Withey's characterization of it as a letter Defendant Di Vittorio

10

sent "to the mother's attorneys in this case that threatened to bring legal action against those

11

attorneys personally for filing certain pleadings and evidence in this case." Dkt. 125 at 33.

12

Finally, Plaintiff contends Defendant Haugen testified she received marching orders from

13

the Head Administrator for all of Snohomish County as well as the "Civil Division" lawyers

14

about how the VGAL Program should respond to discovery requests. Dkt. 217 at 52. Here again,

15

Plaintiff does not provide the Court with a pinpoint citation to this alleged testimony, but again

16

refers to Attorney Withey's Declaration. *Id*. Assuming the transcript reads as Attorney Withey

17

transcribes it in his Declaration, it states:

18

Q: Is it your position that **the VGAL program and its employees are the court**?

19

A: Yes.

20

Q: So, the acts of the VGAL program and its employees are acts of the court?

21

A: **Yes. They are Snohomish County Superior Court employees**.

22

Dkt. 125 at 36 (emphasis added).

23

24

REPORT AND RECOMMENDATION - 41

1   The County does not dispute that the VGAL Program was created and operated through

2 the Snohomish County Superior Court at the time of the dependency case, but claim this

3 arrangement was "statutorily condoned under RCW 13.34.030(13)."[16] Dkt. 222 at 17. However,

4 the County disputes the allegation that this set up constituted a "policy, pattern and practice" of

5 the VGAL Program and the state court engaging in conflicts of interest and ethical violations that

6 evidence deliberate indifference to Plaintiff's constitutional rights, and were thereby the moving

7 force behind the violation of said rights. Dkt. 217 at 51, 73.

8   For the reasons stated, *supra*, the Court finds genuine factual disputes exist regarding the

9 County's *Monell* liability, and therefore does not revisit them here. *See*, *Dougherty*, 654 F.3d at

10 900. Therefore, the County's motion for summary judgment to dismiss Plaintiff's Sixth Cause of

11 Action for violation of the Fourth and Fourteenth Amendment should be denied.

12 **E.  Plaintiffs' State Law Claims**

13   As stated, *supra*, Plaintiffs have withdrawn their NIED and outrage causes of action (Dkt.

14 217 at 72). Two state law claims remain.

15   1. <u>First Cause of Action- Negligent Administration of the Parental Dependency and Termination Program</u>

16

17   Plaintiff alleges the VGAL Program "fails to adequately train, supervise, and maintain its

18 VGALs … [and] fails to create any separation or division between the VGAL program and the

19 Snohomish County Superior Court Juvenile division that hears dependency and parental

20 termination cases." Dkt. 2-1 at 12. As such, Plaintiff alleges the VGAL Program "breached its

21

22 ———————————————

23 [16] RCW 13.34.030 (13) states: "Guardian ad litem program" means a court-authorized volunteer program, which is or may be established by the superior court of the county in which such proceeding is filed, to manage all aspects of volunteer guardian ad litem representation for children alleged or found to be dependent. Such management shall include but is not limited to: Recruitment, screening, training, supervision, assignment, and

24 discharge of volunteers."

statutory duties". *Id*.

Under Washington law a negligence action requires proof of four elements: (1) the existence of a duty; (2) breach of the duty; (3) resulting injury; and (4) proximate causation between the breach and the resulting injury. *Cox v. Department of Social and Health Services,* 913 F.3d 831, 839 (9th Cir. 2019), *citing*, *Michaels v. CH2M Hill, Inc*., 171 Wn.. 2nd, 587 (2011).

The County vis-à-vis the VGAL Program owed a duty of care to Plaintiff A.H. *See e.g*., *Babcock v. State*, 116 Wash.2d 596, 809 P.2d 143 (1991)(allowing foster children to pursue negligence claims against the State and its caseworkers related to the children's placement in foster homes as state owes foster children a duty of care).

Whether the County breached the duty it owed to Plaintiff, and if so whether such breach resulted in injury proximately caused by the County involve questions of fact that must be decided by a jury. *See e.g*., *Hertog v. City of Seattle*, 138 Wash.2d 265, 979 P.2d 400, 406 (1999)("What constitutes reasonable care and whether a defendant breached its duty "are fact questions for the trier of fact."); *see also*, *Petcu v. State*, 121 Wash. App. 36, 86 P.3d 1234, 1244 (2004)(Proximate cause contains two elements: cause in fact and legal cause; cause in fact is a jury question, established by showing that "but for" the defendant's actions, the claimant would not have been injured.).

Accordingly, the Court finds genuine factual disputes regarding Plaintiff's first cause of action against the County should be resolved at trial.

2.    Second Cause of Action- Walker for Negligent Investigation

Plaintiff alleges Defendant Walker "breached her GAL duties, through her actions and inactions in A.H.'s case" to "collect relevant information about the best interests of the child and

1  make recommendations based on an independent investigation of the child's best interests." Dkt.

2  2-1 at 14. Both the County and Defendant Walker argue the tort of "negligent investigation" is

3  inapplicable in this case. Dkt. 188 at 25; Dkt. 192 at 33. This Court concurs.

4        "In general, a claim for negligent investigation does not exist under the common law of

5  Washington. That rule recognizes the chilling effect such claims would have on investigations."

6  *Pettis v. State*, 98 Wash.App. 553, 558 (1999); *see also*, *Blackwell v. Department of Social and*

7  *Health Services*, 131 Wash. App. 372, 375 (2006). The sole exception to the bar on claims for

8  negligent investigation involves cases in which DSHS social workers or law enforcement

9  officers investigate allegations of abuse and neglect pursuant to Wash. Rev. Code (RCW) §

10  26.44.050. *Pettis*, 98 Wash. App. at 559. Efforts to expand this narrow cause of action beyond its

11  statutory confines have been repeatedly rejected by Washington courts. *See*, *Gragg v. Dep't of*

12  *Soc. & Health Servs.*, C13-CV-5620 RBL, 2015 WL 2360283, at *5 (W.D. Wash. May 15,

13  2015)(collecting cases)(citing *M.W. v. Department of Social and Health Services*, 149 Wash.2d

14  589, 600 (June 12, 2003)(rejecting argument that "DSHS has a general duty of care to act

15  reasonably when investigating child abuse, which includes following correct procedures");

16  *Roberson v. Perez*, 159 Wash.2d 33, 46–48 (2005) (rejecting request to enlarge the negligent

17  investigation cause of action to include harms caused by "constructive placement decisions");

18  *Blackwell v. DSHS*, 131 Wash. App. 372, 378–79 (2006) (rejecting expansion of the class who

19  can sue for negligent RCW 26.44.050 investigations to include foster parents).

20        To the extent Defendant Walker and the VGAL Program had an investigatory duty in the

21  dependency case it derived from RCW 13.34.105, not RCW 26.44.050 (2012). Thus, Plaintiff's

22  second cause of action is not cognizable against Defendant Walker or the VGAL Program, who

23  were not DSHS social workers or law enforcement officers.

24

# V. CONCLUSION

For the foregoing reasons the undersigned recommends:

1. Defendant Haugen's motion for summary judgment (Dkt. 182) be granted;

2. Defendant Walker's motion for summary judgment (Dkt. 188) be granted; and,

3. Defendants Snohomish County and Di Vittorio's motion for summary judgment (Dkt. 192) be granted-in-part and denied-in-part. The Court recommends their motion for summary judgment be (a) denied as to Plaintiff A.H.'s federal claims and state law claim of negligent administration of the parental dependency and termination alleged against Snohomish County; and (b) granted as to all remaining portions, which includes dismissing (1) all claims alleged against Defendant Di Vittorio, (2) all claims alleged by Plaintiffs Nylysha Starvion Belafon Aradon, Carey Allen Hayes, and A.L.; and (3) all remaining state law claims alleged by A.H.

In summary, the Court recommends all claims and parties be dismissed from this action except A.H.'s claims against Snohomish County for federal constitutional violations – the Fourth, Fifth, and Sixth Causes of Action – and the state law claim of negligent administration – the First Cause of Action.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

1   imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on

2   March 3, 2023, as noted in the caption.

3          Dated this 15th day of February, 2023.

4

5                                          David W. Christel
                                           Chief United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24